**Herman ANDRAS, et al., Appellants,**

v.

**MEMORIAL HOSPITAL SYSTEM, d/b/a Southwest Memorial Hospital, Appellee.**

No. 01–94–00051–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Nov. 23, 1994.

Rehearing Overruled Dec. 15, 1994.

Donald H. Cahilly, Houston, for appellants.

Keith S. Dubanevich, Terriann Trostle, John F. Kapacinskas, Houston, for appellee.

Before COHEN, WILSON and HEDGES, JJ.

## OPINION

COHEN, Justice.

This is an appeal from a dismissal for discovery abuse. This suit began in April 1991. The plaintiffs alleged fraud, misrepresentation, and violations of the Deceptive Trade Practices Act, complaining that Memorial had performed unnecessary services and overcharged for patient services between 1984 and 1990. When discovery disputes arose, the trial court struck in part the appellants' sole expert witness, struck their pleadings, and dismissed the case with prejudice. We affirm.

## PROCEDURAL BACKGROUND

This suit was originally filed by Newton B. Schwartz, P.C. and Newton B. Schwartz, P.C. as trustee (collectively referred to as "Schwartz") for unnamed clients of his law firm. There were no other plaintiffs. The sole attorney for these two plaintiffs was Newton Schwartz. Schwartz allegedly paid Memorial $284,901.60 for medical services rendered to the clients, who were plaintiffs in personal injury cases, when the reasonable charges for such services would have been $219,113.83. Schwartz was to be reimbursed if the clients won judgments or settlements against defendants.

The first through third amended petitions were filed with Schwartz as plaintiffs, but they listed the names of the approximately 128 clients as persons for whom the trustee was suing.

The fourth amended petition dropped as plaintiffs both Schwartz P.C. and Schwartz P.C. Trustee, but Mr. Schwartz remained the sole plaintiff's attorney until November 24, 1993, six days before the final judgment was signed, when two additional lead counsel were added. The fourth amended petition named as plaintiffs the individuals for whom the trustee had previously sued. Even after Schwartz P.C. and P.C. Trustee were dropped as named plaintiffs, Mr. Schwartz remained as counsel of record and continued to allege that Schwartz P.C. had paid all the disputed bills and should be reimbursed from any money recovered in the suits. Thus, the appellants' consistent claim was that all damage Memorial caused was suffered by Schwartz P.C. as their agent. No individual plaintiff claimed to have paid any bill in any other way. Consequently, all records in dispute were owned by Schwartz P.C., not by any individual plaintiff.

On July 30, 1993, the judge dismissed the claims of 90 plaintiffs because Schwartz could not show authority to sue on their behalf. The judge found that Schwartz had authority to represent 38 plaintiffs. The judge later granted summary judgment against all claims brought by 20 plaintiffs, and granted partial summary judgment on DTPA claims by 17 plaintiffs.

## THE DISCOVERY DISPUTE

On May 23, 1991, Memorial requested production as follows:

*Request No. 1*

All checks, receipts or other such documents evidencing any payments by or on behalf of the plaintiffs of any invoices or billings of Memorial Southwest Hospital or any other affiliated entity.

*Request No. 2*

Any and all documents evidencing any power or authority of Newton B. Schwartz, P.C. to claim damages in this action.

*Request No. 3*

Any and all documents evidencing any trust arrangement between Newton B. Schwartz, P.C. and any other plaintiff to this suit.

*Request No. 4*

Any and all documents or things which evidence any guarantee in writing from the plaintiffs to the defendant relating to any costs or expenses incurred by the plaintiffs for medical services rendered by the defendant.

*Request No. 5*

Any and all documents or things evidencing the plaintiffs allegation that the services rendered by the defendant to the plaintiffs were either not necessary, not customary, not reasonable or not fair charges.

*Request No. 6*

Any and all audits of bills for services referenced in paragraph (iv) of the plaintiffs' first amended original petition and any and all related documents and things reviewed, relied upon or analyzed by the person or persons preparing such audits.

*Request No. 7*

Any and all documents or things which evidence any receipt of funds by the plaintiffs from any and all third parties as a result of any claims or causes of action prosecuted to judgment or settlement, specifically including all agreements of settlement, release or indemnification and all checks, receipts, or other such evidence pertaining to in any manner any injury to the plaintiffs or the medical care provided by the defendant.

The request was directed to Schwartz P.C. and Schwartz Trustee, who were the sole plaintiffs at the time. Newton Schwartz was sole counsel of record at the time. The judge overruled appellants' objections, and appellants do not complain of that ruling.

Requests 5 and 6 were vital to Memorial's defense because they were the basis for the claim of overcharging. Requests 1–4 and 7 were vital to Memorial's defense that Schwartz lacked standing unless it could prove that it, rather than some insurance company or third party, paid the alleged overcharges. For the same reason, those documents were vital to proving Schwartz's case.

On June 30, 1993, the judge granted Memorial's motion to compel and ordered production of the requested information within 15 days. Nevertheless, the records were not produced. Moreover, Mr. Cooper, the appellants' sole expert, testified at his deposition that he refused to produce his audit database, the basis for appellants' claim of overcharging, even after being ordered to do so, because it was "proprietary." He then revealed that he had intentionally destroyed the database in 1992, while Memorial's motion to produce it had been pending for at least seven months.

On October 11, 1993, the judge granted a second motion to compel. She again ordered that appellants produce the requested records and ordered that if they did not comply, their pleadings "may be stricken." Again, the records were not produced.

Finally, on November 22, 1993, the judge ordered the appellants to comply with her previous orders by Thursday, December 2, 1993, at 9:00 a.m. Trial was set to begin four days later. Judge Garcia warned that she **would** strike the appellants' pleadings if her orders were again violated.

On November 29, 1993, the judge struck in part any testimony from Harvey Cooper, the appellants' expert witness who had destroyed the database upon which he had based his opinions.[1] At this hearing, appellants' counsel admitted that Cooper's audit report was based on the database that was "thrown away." Counsel also conceded that Cooper had testified many months before that he could "recreate that database if he is called upon to do that." Cooper never did so despite multiple requests for production, orders compelling production, and a subpoena. The judge observed, "If he could have reproduced this database he should have done it by now." Even though trial was scheduled for December 6, only seven days after the sanctions hearing, the judge gave appellants another chance. She promised to reconsider whether Cooper could testify if he recreated the database. Moreover, she expressed her intent to allow Cooper to testify as long as his testimony was not based on the destroyed database, or even based on the database, if the case was not reached for trial on December 6,

---

1. The order stated that Mr. Cooper's testimony was struck "in part," and that "plaintiffs shall not be allowed to call Mr. Cooper as a witness at the time of trial who would base his testimony on any report or audit created by Mr. Cooper or anyone associated with Mr. Cooper's company, American Medical Auditors, Inc. who relied upon the database the plaintiff's expert witness [Mr. Cooper] failed to produce."

thus giving Memorial time for trial preparation.

Regarding production of cancelled checks and documents evidencing payments by Schwartz P.C., counsel claimed to have produced everything appellants had. No evidence was presented that any individual plaintiff had complied with the three court orders. Counsel did not dispute that no cancelled checks had been produced; rather, she stated that "Mr. Schwartz firmly objects to producing the checks," even though those objections were long ago overruled. The following then transpired:

> THE COURT: He is—What is the proof of payment?
>
> MS. EPPS: They have proof of payment.
>
> THE COURT: He has the cancelled checks that he paid for them? How are you going to prove the damages?
>
> MS. EPPS: Well, that's going to require some thought. My understanding is that these checks, this proof of payment on Memorial Hospital's own ledgers show that Mr. Schwartz did pay them. It says Newton B. Schwartz, attorney and on the ledgers that we produced it showed the check numbers and amounts made payable to Memorial Hospital.
>
> THE COURT: So they exist?
>
> MS. EPPS: The checks?
>
> THE COURT: Yes.
>
> MS. EPPS: Mr. Schwartz objected to producing them.
>
> THE COURT: He's been ordered to produce them. You've got three days to produce them or I'm going to grant his request to strike.

From this exchange, the judge could have concluded that: 1) Mr. Schwartz had the checks but refused to produce them due to reliance on his overruled objection, or 2) there was no evidence of payment by Mr. Schwartz, i.e., cancelled checks, that could be produced, nor would there be in the future. On December 3, 1993, the judge struck the pleadings and dismissed the case because appellants had once again failed to produce the requested discovery information. Although appellants moved for reconsideration, they never produced Mr. Cooper's database or promised to produce it on a date certain.

## THE DISMISSAL ORDER

We consider four factors in deciding whether the trial judge abused her discretion by imposing sanctions:

1. Whether there was a "direct" relationship between the sanctions and the discovery abuse;
2. Whether the sanctions were too severe;
3. Whether a lesser sanction was first imposed upon the offender by the trial judge;
4. Whether the conduct justified a presumption that the claim or defense was without merit.

*Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 849–50 (Tex.1992).

The record shows that there was a direct relationship between the sanctions and the conduct. This case was originally brought by attorney Newton Schwartz on behalf of Newton B. Schwartz, P.C., and Newton B. Schwartz, P.C., Trustee. That petition alleged that Schwartz paid all the alleged overcharges. The first and third amended petitions were brought in the name of the same plaintiffs but named the persons for whom Schwartz had paid the bills. The fourth amended petition dropped Schwartz as a named plaintiff, but it alleged that the professional corporation had paid all the bills. The fifth amended petition alleged the same. Newton Schwartz signed these pleadings.

These facts suggest the court was justified in concluding that Mr. Schwartz, acting on behalf of his clients, failed to comply with discovery orders. All pleadings claimed the professional corporation had paid the bills and was suing as representative for the individuals. In this case, the lawyer, Newton B. Schwartz, is indistinguishable from the original plaintiffs, Newton B. Schwartz, P.C., and Newton B. Schwartz, P.C., Trustee. The records and transactions that are the substance of this suit were his own records and his own transactions, although they took place on behalf of the various named individuals.

The supreme court has stated that a lawyer cannot shield his client from sanctions. *TransAmerican Natural Gas v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). This rule is especially appropriate in this case, where the lawyer was also the client until the fourth amended petition and was the person who incurred the debt, paid the bills, and suffered any damage as representative of the client. *TransAmerican* requires that the trial judge "at least attempt to determine whether the offensive conduct is attributable to counsel only, or the party only, or to both." 811 S.W.2d at 917. In this case, the judge could have found the conduct was attributable to both because of Mr. Schwartz's multiple roles as lawyer, plaintiff, trustee, witness, and acknowledged sole creator of the payment records. Consequently, we conclude there was a direct relationship between the sanctions and the conduct.

■ We next consider whether sanctions were too severe. The conduct in this case took place over a period of two and one-half years. Three orders compelling discovery were not enough to produce the documents. The documents requested unquestionably went to the heart of both the claim and the defense, i.e., whether Mr. Schwartz had actually paid the bills and thus had standing to sue. It is significant that the discovery request that resulted in the sanctions was issued to Newton B. Schwartz, P.C. and Newton B. Schwartz, P.C., Trustee, at a time when they were the sole named plaintiffs. The other unproduced document, the database that appellants relied on to prove overcharges, also went to the heart of their own case as well as to the heart of Memorial's defense.

Appellants rely on *Chrysler Corporation v. Blackmon*, which held that a party could not be penalized for failing to produce documents where no evidence showed that they existed or were within its control. 841 S.W.2d at 850. We believe the present case is distinguishable from *Chrysler* in several important respects. First, Chrysler was the defendant; appellants were the plaintiffs. It is more reasonable to expect a plaintiff to retain and produce the records essential to proving its own claim than it is to expect a defendant

like Chrysler to retain records to prove a plaintiff's case that was brought years later. Furthermore, Chrysler produced more than 80,000 documents, made 100,000 more available for inspection, and spent more than $250,000 satisfying discovery requests before it was sanctioned. *Id.* at 845. In defending a lawsuit over whether its vehicle was crashworthy, Chrysler produced 100 crash test files. *Id.* at 846. Appellants produced no cancelled checks, and according to the dismissal order, informed the judge that none would be produced and that they "have no evidence to establish who paid the medical bills made the basis of the ... cause." Thus, there was no reason to believe that any lesser sanction would be effective. Finally, there was no showing in *Chrysler* that the plaintiffs were unable to prepare for trial without the additional crash test reports they sought. *Id.* at 850. Here, all agree that the unproduced documents are vital to both the prosecution and the defense of this lawsuit. Given these circumstances, we conclude that the sanctions were not too severe.

■ We next determine whether a lesser sanction was first imposed before the pleadings were struck. Three orders to compel discovery preceded the ultimate sanction. None included monetary penalties, attorney's fees, contempt, nor other punishment. We have held that an order to compel, standing alone, is not the type of lesser sanction that must precede the ultimate sanction. *Bair v. Hagans*, 838 S.W.2d 677, 681 (Tex.App.—Houston [1st Dist.] 1992, writ denied). However, an order to compel joined with a statement that noncompliance would result in dismissal does constitute a lesser sanction. *Jaques v. Texas Employers' Ins. Ass'n*, 816 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1991, no writ). In *Jaques*, this court wrote:

> We believe lesser sanctions than striking pleadings and dismissal would have been effective and should have been utilized. For example, the trial court could have again ordered Jaques to answer the three interrogatories, stating in the order that his failure to do would result in his pleadings being stricken and his case being dismissed; if Jaques failed to comply with

that order, with full notice of the "death penalty consequences," we believe such sanctions would be appropriate.

*Id.*

The trial judge here did as we suggested in *Jaques.* Therefore, we hold that an order to compel coupled with a threat to dismiss for noncompliance is a lesser sanction within the meaning of *Chrysler v. Blackmon.* In this case, there were two such warnings.

■ We next consider whether the conduct justified a presumption that the claim was without merit. Appellants were unable to produce cancelled checks to prove their claim despite three court orders to do so and remained unable to do so until four days before the case was set for trial and also afterwards, during the period for filing a motion for new trial. The missing documents were vital to appellants' case, and the dismissal order states that counsel admitted they could not be produced. This justified a presumption that the claim was without merit, as shown by the trial judge's question asking how appellants planned to prove damages and the response following it, both quoted above. In the order of dismissal, the trial judge wrote:

> A telephone conference was held at 9:30 a.m., December 2, 1993, in which plaintiffs counsel indicated that the cancelled checks would not be produced. Counsel also stated that the plaintiffs have no evidence to establish who paid the medical bills made the basis of the above styled and numbered cause.

Appellants further complain that they were denied a hearing and the opportunity to present evidence. A hearing took place on November 29, and appellants made no attempt to present evidence. Thus, they were not denied any rights.

Point of error one is overruled.

■ In their second point of error, appellants contend the trial judge erred in striking in part the testimony of Mr. Cooper. We evaluate this claim under the same standard from *Chrysler v. Blackmon.*

For reasons stated above, we conclude that the court was justified in presuming the case lacked merit due to appellants' inability to produce the audit database. Mr. Cooper admitted that his opinion was based on the destroyed database and not on other documents, and appellants agree that the database was essential to prove the alleged overcharges, which makes it essential to Memorial's defense.

We further find that a lesser sanction was imposed, based on *Jaques v. Texas Employers' Ins. Ass'n,* 816 S.W.2d at 131.

The sanctions imposed were not more severe than necessary. As the trial judge noted, Mr. Cooper had many months to recreate the database he had destroyed. He did not do so, even after the trial judge stated on November 29 that she would give him an opportunity to do so.

Finally, appellants contend there is no direct relationship between the offensive conduct and the sanction. They contend that they cannot be sanctioned for failure to produce a database that does not exist. We do not agree that an expert witness can destroy the document that is the basis for his expert opinion and then claim inability to produce it as a defense to sanctions. *See United States Fire Ins. Co. v. Maness,* 775 S.W.2d 748, 751 (Tex.App.—Houston [1st Dist.] 1989, writ ref'd). Appellants contend the judge did not determine whether the party at fault for the destruction was Mr. Cooper or their attorney, Mr. Schwartz. If the fault was that of Mr. Schwartz, the sanction was just and bore a direct relationship to the offensive conduct, given his many roles in this suit as attorney, plaintiff, trustee, and witness. If the fault was that of Mr. Cooper, the trial judge did no more than was necessary. She struck his testimony only in part, i.e., that which was based on the destroyed database, and gave him several opportunities to recreate it. We conclude there was no abuse in discretion in limiting the testimony of Mr. Cooper.

Point of error two is overruled.

The judgment is affirmed.