GLOBAL SERVICES, INC., Steve Eifert, Alfred Vieira, and Herbert Michael Mueller, Relators,

v.

The Honorable Richard BIANCHI, Judge, Respondent.

No. 94–0503.

Supreme Court of Texas.

Argued Jan. 5, 1995.

Decided June 29, 1995.

Patrick J. Dyer, Houston, for relators.

Kenneth B. Cole, Houston, for respondent.

HECHT, Justice.

In the pending litigation from which this original mandamus proceeding derives, the district court found that defendants had not produced records plaintiff requested, based in part upon its review of documents submitted by plaintiff *in camera* and never shown to defendants. The court sanctioned defendants by prohibiting them from conducting any further discovery until all requested records are produced. Defendants insist that they have fully complied with plaintiff's discovery request, and that the district court abused its discretion in making a contrary finding without allowing them to see the evidence relied upon. We conclude that plaintiff did not meet his burden to prove defendants' failure to produce documents, that the district court deprived defendants of any reasonable opportunity to demonstrate their compliance with plaintiff's discovery request, and that the imposition of sanctions was thus a clear abuse of discretion. We conditionally grant relief.

## I

Tadeusz M. Jug sued his former employer, Global Services, Inc., and three of its officers, president Steve Eifert and vice presidents Herbert Michael Mueller and Alfred Vieira, alleging that he was discharged for refusing to participate in, and order others to perform, various illegal acts, including tax, insurance and customs fraud. Defendants, to whom we refer collectively as GSI, assert that Jug was fired for his involvement in stealing computer components. GSI has counterclaimed for the return of computer components and business records allegedly in Jug's possession, and for an injunction prohibiting Jug from using confidential and proprietary information to wrongfully compete with GSI.

Jug moved to compel GSI to produce documents in response to a request to which GSI had lodged objections. The district court overruled GSI's objections, granted Jug's motion, set a date for production of the documents, and prohibited defendants from conducting any discovery of their own until "all responsive documents in existence" had been produced. On the date set by the court defendants produced a large number of documents (they say 300,000 pages and Jug does not dispute that number here). About a month later Jug and his counsel spent less than two days examining the documents. During that time they were able to review

some, but certainly not all, of the documents produced.

GSI asked Jug to produce any GSI documents in his possession that would be covered by his request to GSI. Jug refused and instead accused GSI of destroying and hiding documents. Jug filed a second motion to compel GSI to produce all the documents he had requested, and a motion to quash GSI's request. This motion to compel was supported by two exhibits, "A" and "B", which were delivered to the district court *in camera* and not shown to GSI. Jug explains that his refusal to show GSI these documents is based on his concern that GSI would destroy the documents if it knew what they were, although he does not explain why it would matter for GSI to destroy the documents if he has copies. Jug's motion did not describe Exhibit A but purported to quote from it as follows:

> After the negotiated price is agreed upon, sales orders are generated from the "AL" list.... The last order was invoiced to the P. Leviner account for $285.00.... Actual cash received for this was $15,-000.00.... The P.L. account has a credit balance at the present time. This amount came from a Texoma check which was deposited over a year ago into P.L. account. The P.L. account has a credit balance at the present time. This amount came from a Texoma check which was deposited over a year ago into P.L. account. As equipment is sold to P.L., the amount is debited to the P.L. account. And cash goes to you. Based on last transaction, our cost on the books for equipment was $4,650.00.... Invoiced amount was $285.00.... Paper book loss was $4,365.00.... Non taxable cash received was $15,000.00.... Profit is $10,-350.00 (non taxed).... And a loss on the books of $4,365.00.

The motion described Exhibit B as follows:

> Additionally, the Court can see from In Camera Exhibit "B" that Defendants invoiced equipment to a company called A.C.I. in Houston for $10,950.00; invoiced that same equipment to a company in Monterrey, Mexico for $4,950.00; yet re-ceived payments totalling $19,655.00 for "training manuals."

Also attached to the motion was the following affidavit by Jug:

> I have reviewed Exhibit "A" to Plaintiff's Second Motion to Compel Production of Documents and it is a true and correct copy of what it purports to be. I have reviewed Exhibit "B" to Plaintiff's Second Motion to Compel Production of Documents, and Exhibit "B" is constituted of true and correct copies of the business records of Global Services, Inc.
>
> While I was still employed with Global Services, Inc., I personally saw many other documents similar in nature to the documents which constitute Exhibit "B." These other documents were located in a metal cabinet and/or credenza which were in the office of Al Vieira, one of the Defendants in this lawsuit. I personally attended the Defendants' Court-ordered document production in this lawsuit, and the documents which I previously observed as discussed above were not produced by Defendants at that time.

Jug was last employed with GSI in August 1993, and his examination of the documents produced by GSI was in March 1994. Thus, his affidavit asserts that GSI had documents sometime before September 1993 which it did not produce the following March. The affidavit does not state that GSI had documents in March 1994 which it did not produce.

GSI filed a lengthy response to Jug's second motion to compel, attaching affidavits from the three defendant GSI officers describing efforts undertaken to ensure production of all documents responsive to Jug's request so as to comply fully with the district court's discovery order. Each officer swore that he had not destroyed or hidden documents or instructed anyone else to do so. With respect to Exhibit "A" to Jug's motion, Eifert stated:

> I have reviewed each quotation which references "Exh. A" and I do not have any documents which contain any of those statements. I instructed Global personnel to review the quotations to ascertain if either they or Global had any such documents. They did so, and neither they nor

Global has any documents which contain any of those statements. If such documents ever did exist, neither I nor Global have them. Either Mr. Jug took the only copy or the document was never in Global's possession. Frankly, I have no present recollection of ever having seen such a document.

Mueller and Vieira made similar averments. Each officer also stated that he knew of no document like the one described as Exhibit "B" in Jug's motion that had not been produced. Vieira averred, in response to Jug's affidavit:

The affidavit refers to a "metal cabinet and/or credenza" in my office. I have a file cabinet and credenza in my office. I personally searched both the file cabinet and credenza to make sure that all of the documents requested were produced, and they were. Nothing responsive has been withheld.

All three officers concluded that if Jug had documents that were once in GSI's possession, he had taken them without authorization, and GSI no longer had them. Two of the officers recounted instances in which Jug told them he had broken into their offices as a prank, and one of the officers recalled that Jug's wife had also been employed by GSI and had had access to its documents. One of the officers also stated that documents were missing from Jug's personnel file.

In addition to the three affidavits GSI filed in response to Jug's second motion to compel, GSI's supplemental responses to Jug's requests for production unequivocally stated that all requested documents had been produced. GSI complained that it had produced an enormous number of documents, that despite Jug's cursory examination of those documents he persisted in asserting that some had been destroyed or hidden, and that Jug had provided the court with no evidence to support his assertion, other than possibly the documents submitted *in camera*, which it had not seen and therefore could not discuss.

The district court, without conducting a hearing or receiving any other evidence, and without stating its reasons, granted Jug all the relief sought. The court again ordered GSI to produce all documents covered by Jug's request, continued the prohibition against GSI's conducting any discovery of its own, and ordered GSI to "cease and desist" from all efforts to obtain injunctive relief. The court's ruling is embodied in an order issued May 2, 1994, and it is this order that GSI seeks to have reviewed by mandamus. After unsuccessfully seeking mandamus relief from the court of appeals, GSI initiated this proceeding.

## II

■ To obtain mandamus relief GSI must show that the district court's ruling was a clear abuse of discretion for which there is no adequate legal remedy. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992). We consider first whether the district court clearly abused its discretion.

■ "[W]hen a motion for sanctions asserts that a respondent to a discovery request has failed to produce a document within its possession, custody or control, the movant has the burden to prove the assertion." *GTE Communications Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993). Jug has not met this burden. The only evidence he offered was his own affidavit and two exhibits submitted to the court *in camera*. His affidavit says only that he saw documents at GSI before leaving his employment there that he did not see at the document production seven months later. Even if it is assumed that Jug looked through the 300,000 pages of documents GSI produced, carefully enough in less than two days to determine that documents he had seen before were not among them, Jug's affidavit is not evidence that GSI had possession of the documents at that time and failed to produce them. Jug has not even denied the charge by GSI's officers that if there are documents that were not produced it is because Jug took the only copies.

In *GTE*, plaintiffs obtained sanctions against GTE Communication Systems Corporation for failing to produce a document referred to as the GTFL memo. We stated:

The only evidence plaintiffs offered to show that GCSC had actual possession of the memo was the testimony of [plaintiffs'

expert witness] Charles James that it was "totally inconceivable" to him that GCSC did not have the memo. James admitted, however, that he had never worked for GCSC and had no personal knowledge of whether GCSC had ever had the GTFL memo. The memo has not been located in GCSC's files, no GCSC employee has acknowledged ever seeing it, and there is no circumstantial evidence that would indicate that GCSC ever had the memo. Under these circumstances, James' testimony is no more than mere surmise.

*Id.* In the present case, unlike *GTE*, Jug has averred that he once saw documents in GSI's files that have not been produced. Nevertheless, his affidavit falls short of providing the necessary proof that GSI has failed to produce requested documents.

The exhibits submitted *in camera* also cannot support Jug's assertions. In *Remington Arms Co. v. Canales*, 837 S.W.2d 624, 626 (Tex.1992), we held that an affidavit submitted *in camera* could not provide the evidence necessary to establish a claim of privilege. *Accord State v. Lowry*, 802 S.W.2d 669, 671 n. 2 (Tex.1991); *Barnes v. Whittington*, 751 S.W.2d 493, 495 n. 1 (Tex.1988). In the present case, Jug's affidavit was not submitted *in camera*, but the documents to which it referred were. The problem presented in the two cases, however, is the same: the responding party has no adequate means of rebutting the movant's assertions because he cannot see the evidence being used against him. GSI cannot fully respond to Jug's charge that it has withheld production of the documents submitted *in camera* because it has never seen the documents. If Jug is unwilling to show GSI the documents he claims have been withheld, he cannot rely on them to obtain sanctions.

■ We recognize that it is often difficult to prove that a party has withheld documents from discovery. Direct evidence of such conduct is seldom available, and it may be necessary to rely entirely upon circumstantial evidence. But an imposition of sanctions cannot be based merely on a party's bald assertions. There must be some evidence to show an abuse of discovery before sanctions can be imposed. *Chrysler Corp. v.*

*Blackmon*, 841 S.W.2d 844, 850 (Tex.1992). Here, the district court did not find that GSI failed to produce particular documents, nor did it order the production of any specific documents. Rather, the court ordered GSI to keep trying to produce all the documents requested, and prohibited GSI from conducting any discovery of its own until it complied. GSI cannot determine from the court's rulings what must be done to have the court's sanction lifted. Thus, the effect of the sanction is to prohibit GSI from conducting any discovery.

■ We do not suggest, of course, that staying a party's discovery is never an appropriate sanction in any case. Staying discovery is expressly authorized by Rule 215(2)(b)(1) of the Texas Rules of Civil Procedure, which states in pertinent part:

> If a party ... fails to comply with proper discovery requests or to obey an order to provide or permit discovery, ... the court in which the action is pending may, after notice and hearing, make such order in regard to the failure as are just, and among others the following:

> (1) An order disallowing any further discovery of any kind or of a particular kind by the disobedient party....

When this or any other sanction is imposed, however, it must "be no more severe than necessary to satisfy its legitimate purposes." *TransAmerican Natural Gas Co. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). Prohibiting GSI from conducting any discovery whatever prevented it from obtaining evidence from Jug and his wife as to whether they took GSI records with them when they left its employ, and hampered the preparation for trial. In these circumstances, the sanction was inappropriate and excessive, and to impose it was thus a clear abuse of discretion.

### III

We next consider whether GSI has an adequate remedy by appeal.

■ The trial court's order in this case denies GSI discovery of the factual basis for Jug's claims and any other evidence from Jug and non-party witnesses until GSI complies with some indeterminate condition es-

tablished by that order. Remedy by appeal is inadequate when the trial court disallows discovery and the missing discovery cannot be made part of the appellate record. *Walker,* 827 S.W.2d at 843. When this occurs, a reviewing court is unable to evaluate the effect of the trial court's alleged error on the record before it. *Id.* at 843–844. This circumstance typically arises when the trial court issues a protective order, thereby keeping the requested evidence out of the appellate record. Here discovery will be "missing", not because the district court issued a protective order in favor of Jug, but because it barred discovery as a sanction against GSI. This missing discovery cannot be made part of the appellate record because the district court order precludes GSI from obtaining it.

Accordingly, we conclude that GSI has no adequate remedy by appeal.

\* \* \* \* \* \*

For the reasons given, GSI is entitled to mandamus relief directing the district court to vacate its order of May 2, 1994. We are confident that the district court will comply, and will conduct further proceedings in accordance with this opinion. Only if it fails promptly to do so will the writ issue.