**BUTAN VALLEY, N.V., Appellant,**

v.

**Candace L. SMITH, Appellee.**

No. 14–95–00048–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

April 18, 1996.

H. Victor Thomas, for appellant.

Patricia L. Casey, Houston, for appellee.

Before YATES, FOWLER and O'NEILL, JJ.

FOWLER, Justice.

Appellant, Butan Valley, appeals a death penalty sanction for alleged discovery abuses. Using the guidelines established by the Texas Supreme Court in *TransAmerican Natural Gas Corp. v. Powell*, we hold that the sanction was inappropriate. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913,

916 n. 4 (Tex.1991). The judgment is reversed, and the cause is remanded for further proceedings in accordance with this opinion.

## FACTS AND PRIOR POSTURE

Butan Valley is a foreign corporation. Butan Valley's sole shareholder is Abdullah Alkasabi. Abdullah is also one of the directors for the company, but for the time period of the events in question, had given a full power of attorney for the company to his son, Osama Alkasabi.

Butan Valley hired appellee, Smith, on March 20, 1991, to represent it in a lawsuit. A dispute arose regarding Smith's representation. She withdrew as Butan Valley's counsel and then filed suit for breach of contract on April 15, 1993, seeking $5,022.51. Butan Valley filed an answer and a counterclaim, alleging breach of contract, fraud, negligent misrepresentation, and violations of the Texas Deceptive Trade Practices Act (the "DTPA"). Butan Valley's claims were based in part on (1) an alleged agreement by Smith to obtain prior approval of work in excess of $5,000, and (2) Smith's apparent decision to increase her hourly rate to $125 when she had told Butan Valley it would be $100.

### First Request for Production

The discovery process began when Smith served Butan Valley with her first request for production on July 27, 1993. Butan Valley timely responded and objected to three requests: (1) request no. 4 for all financial statements for the years 1991, 1992, and 1993; (2) request no. 5 for any recorded communications between Osama Alkasabi and Abdullah Alkasabi; and (3) request no. 8 for all corporate resolutions or other written documents authorizing Smith to file a lawsuit on behalf of Butan Valley, along with cancelled checks, and written documents authorizing Butan Valley to employ Smith.

Smith maintained that Butan Valley did not fully respond to her discovery requests, and therefore, on September 23, 1993, filed a motion to compel on the first request for production. The court granted the motion, and on November 8, 1993, ordered Butan Valley to produce all documents within ten days to the extent that they existed. Butan Valley filed a supplementary written response to the request for production on November 29, 1993, 11 days late, claiming that it had already produced all documents responsive to the requests.

### First Set of Interrogatories

Smith served her first set of interrogatories on Butan Valley on November 4, 1993. The interrogatories pertinent to this appeal are 5, 8, 11, and 21 by which Smith attempted to ascertain both the amount and calculation of Butan Valley's alleged damages, and the basis for several of Butan Valley's claims and defenses. Interrogatory 5 requested Butan Valley to state each alleged misrepresentation by Smith. Butan Valley responded with 50 separate actions it claimed were misrepresentations. Interrogatory 8 requested Butan Valley to identify each service Butan Valley alleged was unauthorized. Butan Valley responded with 85 separate services, which appear to be taken directly from Smith's bills, and include the services performed, the time spent, and the date. Interrogatory 11 requested Butan Valley to state separately each failure of consideration it contended occurred; Butan Valley's answer referred Smith to the answers to interrogatories 5 and 8. Interrogatory 21 asked Butan Valley to state the manner of calculation of her damages of not less than $9,000. Butan Valley's answer again referred Smith to interrogatory answers 5 and 8, and also to interrogatory 13. Interrogatory 13 inquired about Butan Valley's claim of payment and requested an accounting of amounts paid to Smith. Butan Valley responded that it had paid Smith more than $15,000 but did not provide an accounting of amounts paid.

### Motion for Sanctions

Smith moved for sanctions on November 22, 1993 and December 3, 1993, contending Butan Valley had abused the discovery process by not adequately responding to her discovery requests. TEX.R.CIV.P. 215. Smith requested the court to strike Butan Valley's original answer and counterclaim because Butan Valley had not responded to Smith's first request for production and the

order on the motion to compel signed November 8, 1993. The record does not show that these motions were set for hearing and presented to or ruled on by the court.

### Second Request for Production

On January 24, 1994, Smith filed her second request for production requesting Butan Valley's written agreements for a "ceiling on attorney's fees," tax returns, calculations of damages, expert reports, and certain corporate resolutions authorizing the appointment of Osama Alkasabi as attorney in fact for Butan Valley. Butan Valley responded that it had produced all documents responsive to the request.

### TRIAL SETTING REQUESTS BY BOTH PARTIES

On February 16, 1994, Smith, who at this time was representing herself, requested a trial setting for May 9, 1994.[1] The trial setting was continued at Smith's request when Smith's expert on attorney's fees was unavailable to testify and Butan Valley opposed Smith's motion to designate another expert. According to the parties, two other trial settings Butan Valley requested were continued because Butan Valley amended its counterclaim, requesting $2000 more in damages and adding its claim for legal malpractice.

### August 18th Discovery Order

On August 8, 1994, Smith filed a second motion to compel, reurging Butan Valley's failure to adequately respond to certain of her requests for production and interrogatories. The trial court held an oral hearing on the motion on August 15 and, on August 18, 1994 ("August 18 Discovery Order"), found that Butan Valley had failed to comply with the court's November 1993 order compelling it to produce certain documents and that Butan Valley was resisting discovery, pursuant to Rule 215 of the Texas Rules of Civil Procedure. Consequently, the court entered a very specific discovery order, ordering Butan Valley to fully respond within 30 days of August 15 to certain requests in Smith's first

and second requests for production and to specific interrogatories contained in Smith's first set of interrogatories. Furthermore, even though Smith previously had deposed Osama Alkasabi, the trial court ordered Butan Valley to produce him in Houston again and to produce Abdullah, a resident of Saudi Arabia, in Houston. The August 18 Discovery Order directed Butan Valley to make available both Alkasabis for depositions "on August 31, 1994, or on another mutually agreeable date within 30 days from August 15, 1995."

In addition, even though Butan Valley claimed that certain documents did not exist, the court found that Butan Valley had failed to comply with its previous order compelling production of the documents. Finally, the order stated that if Butan Valley did not comply with any part of the order, the court would strike Butan Valley's answer and counterclaim and enter judgment for Smith.

On August 26, 1994, Butan Valley filed a motion for rehearing on the August 18 Discovery Order and a request for a protective order claiming that (1) it had responded sufficiently to discovery, (2) the court could not require Abdullah, a foreign resident and nonparty, to come to Houston for a deposition, (3) requiring Osama to appear for another deposition was burdensome and would cause Butan Valley unnecessary expense, and (4) it could not be required to produce documents it did not have. Attached to the motion was a sworn affidavit of Osama stating, among other things, that the company did not have the documents, that Abdullah was a resident of Saudi Arabia and not a party to the suit, and that Osama, not Abdullah, dealt with Smith concerning her representation of Butan Valley. The trial court held a hearing on August 31, 1994, the date Osama and Abdullah's depositions were to be taken, and denied the motion at the conclusion of the hearing.

Butan Valley attempted to have the August 18 Discovery Order set aside by mandamus and on September 13, 1994, it filed a motion for leave to file a petition for writ of

---

1. At some point after this trial setting but before the two requested by Butan Valley, Smith stopped representing herself and hired counsel.

mandamus regarding the discovery order, which this court initially granted, but then denied on September 29, 1994.

Butan Valley did not produce Osama or Abdullah for deposition as required in the discovery order and did not file supplemental responses to the written discovery until the day the trial court entered judgment, on October 13, 1994.

## ENTRY OF JUDGMENT

On October 10, 1994, Smith moved for entry of judgment pursuant to the Discovery Order. Smith requested the court to award her damages of $5,022.51, along with reasonable and necessary attorney's fees. On October 12, Butan Valley faxed to Smith supplemental responses to the requests for production and interrogatories and on October 13, 1994, Butan Valley filed with the court the supplemental responses and a response to the motion for entry of judgment. Also on October 13, 1994, the trial court held a hearing on Smith's motion. Finding that Butan Valley abused the discovery process and failed to comply with the court's prior Discovery Order, the court struck Butan Valley's counterclaim, but allowed Butan Valley's defensive pleadings to remain intact. The trial court then severed the counterclaim from the case-in-chief.

## SOLE POINT OF ERROR

Butan Valley complains the trial court abused its discretion and committed reversible error when it struck Butan Valley's counterclaim and entered judgment against Butan Valley on its counterclaim.

### Discussion

■ Discovery sanctions imposed by a trial judge will be set aside only when the court clearly abused its discretion. *Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986); *Cellular Marketing, Inc. v. Houston Cellular Telephone Co.*, 838 S.W.2d 331, 333 (Tex.App.—Houston [14th Dist.] 1992, writ denied). The test for abuse of discretion is whether the court acted without reference to any guiding rules and principles, or whether the act was arbitrary or unreasonable. TEX. R.CIV.P. 215; *Downer v. Aquamarine Opera-*

*tors, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985) *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *White v. Bath*, 825 S.W.2d 227, 229 (Tex.App.—Houston [14th Dist.] 1992, writ denied).

■ The legitimate purposes of discovery sanctions are threefold: (1) to secure compliance with discovery rules; (2) to deter other litigants from similar misconduct; and (3) to punish violators. *Arkla, Inc. v. Harris*, 846 S.W.2d 623, 628 (Tex.App.—Houston [14th Dist.] 1993, no writ); *Smith v. Nguyen*, 855 S.W.2d 263, 267 (Tex.App.—Houston [1st Dist.] 1993, writ denied). All sanctions imposed must be "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d at 917.

■ In *TransAmerican*, the Supreme Court created a two-prong analysis to determine if a sanction is just. "First, a direct relationship must exist between the offensive conduct and the sanction imposed." *Id.* This means the sanction must remedy the prejudice caused the innocent party and punish the actual offender, whether that be the party or its counsel. *Id.* This first prong also contemplates a showing by the moving party that it is unable to prepare for trial without the requested discovery. *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 850 (Tex. 1992). The second step in determining if a sanction is just is that the sanction must not be excessive. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d at 917. The punishment must fit the crime. Trial courts must consider lesser sanctions before using the death penalty, for ultimate sanctions violate due process absent a party's flagrant bad faith or counsel's callous disregard for the discovery process. *Id.* at 918. One additional instruction from *TransAmerican* is that, "discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit." *Id.*

■ During appellate review of discovery sanctions, the entire record, including any evidence, arguments of counsel, the written discovery on file, and the circumstances surrounding the party's alleged discovery abuse must be examined. *Chrysler Corp. v. Black-*

*mon,* 841 S.W.2d at 851–852; *U.S. Fidelity & Guar. Co. v. Rossa,* 830 S.W.2d 668, 672 (Tex.App.—Waco 1992, writ denied). Thus, we will review the trial court's actions under the abuse of discretion standard, using the requirements set out in *TransAmerican,* and by examining the entire record before us.

Before we can engage in a review of the record, however, Smith raises a matter we must briefly address. Smith claims that we should affirm the judgment because Butan Valley has failed to provide us a statement of facts from the August 15 discovery hearing out of which the August 18 Discovery Order was entered. As Smith points out, the appellant has the burden of bringing forward a sufficient record to establish a right to relief. Tex.R.App.P. 53.

■ We have statements of facts from the last two hearings the trial court held—the August 31 hearing (on Butan Valley's motion for reconsideration of the August 18 Discovery Order) and the October 13 hearing (on Smith's motion for judgment). According to Smith, this court cannot find fault with the trial court's actions without a transcription of three hearings—the August 15 discovery hearing, the August 31 hearing, and the October 13 hearing. Had either of the parties presented evidence to the court at the August 15 hearing, Smith's point would be well-taken. *See Walker v. Packer,* 827 S.W.2d 833, 837 (Tex.1992). However, the record before us clearly shows neither party presented evidence at the hearing. First, the judge entered the August 18 Discovery Order "[a]fter consideration of the motion and the arguments of counsel (no written response having been filed)." The order does not say that the judge considered evidence. Second, all parties acknowledge in their briefs that no evidence was presented. In fact, Smith *complains* in her brief that Butan Valley *should* have submitted evidence opposing the motion to compel heard on August 15, but did not. When evidence is not submitted at a hearing, there are no factual resolutions to presume in the trial court's favor. *Otis Elevator Co. v. Parmelee,* 850 S.W.2d 179, 181 (Tex.1993). Consequently, the record we have before us is sufficient for

us to determine if the trial court acted properly in imposing sanctions.

Turning to the judgment, the trial court imposed the death penalty sanction because Butan Valley (1) failed to produce Osama and Abdullah Alkasabi for depositions, (2) failed to calculate its damages, and (3) failed to produce its tax returns and financial statements for 1991–1993, written communications between Osama and Abdullah, and Butan Valley's corporate resolutions (sometimes collectively called "corporate documents"). The court also found that Smith would be prejudiced without the requested discovery.

Upon a review of the entire record, we conclude that the trial court clearly abused its discretion when it entered death penalty sanctions. The trial court violated the first prong of *TransAmerican* when it entered sanctions for Butan Valley's failure to produce (1) Abdullah Alkasabi for a deposition, and (2) documents that Butan Valley's corporate representative swore it did not have and that Smith did not prove it had. In addition, the trial court violated the second prong of *TransAmerican* when it entered death penalty sanctions because Butan Valley did not (1) produce Osama Alkasabi for deposition, and (2) further calculate its alleged damages.

## THE FIRST PRONG OF TRANSAMERICAN

As mentioned above, the first prong of *TransAmerican* requires a direct relationship between the offensive conduct and the sanctions imposed. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d at 917. This requirement means that the sanction must remedy the prejudice caused the innocent party and punish the actual offender. *Id.* We will consider separately Butan Valley's failure to produce Abdullah Alkasabi for deposition and its failure to produce the corporate documents.

### Abdullah Alkasabi's Deposition

Rule 201 of the Texas Rules of Civil Procedure governs the taking of depositions; Rule 201(5) governs *when and where* depositions shall be taken. Rule 201(5) states in part that, "[t]he place of taking a deposition shall be in the county of the witness' residence or,

where he is employed or regularly transacts business in person or at such other convenient place as may be directed by the court in which the cause is pending." Tex.R.Civ.P. 201(5).

■ An exception to this requirement exists when the deponent is a party or one designated by the party to testify for it pursuant to 201(4). As the following shows, Abdullah did not fall within this exception. The notice was sent to Abdullah individually, not to the corporation. The record also shows only that Abdullah Alkasabi was the sole shareholder and a director of Butan Valley, not that he was a party to this suit. In addition, his residence was Saudi Arabia. The record does not show that Abdullah was employed in Houston, regularly transacted business in Houston or that Houston was a convenient place for Abdullah to have his deposition taken.

Based on this record, Rule 201(5) would require Smith to take Abdullah's deposition in Saudi Arabia. In fact, in *Wal–Mart Stores Inc.*, the Texas Supreme Court ruled that a trial court does not have discretion to order a major shareholder and/or director of a corporation, who is not a party and has not been designated by the corporation to testify for the corporation, to appear for deposition in a county other than where he resides or works. *Wal–Mart Stores, Inc. v. Street,* 754 S.W.2d 153, 155 (Tex.1988).

Consequently, this portion of the order fails to meet the first prong of *TransAmerican* because the trial court had no authority to order Abdullah to appear in Houston for a deposition and, therefore, Butan Valley caused no prejudice that needed to be remedied. Thus, the trial court abused its discretion to the extent the death penalty sanctions were based upon Butan Valley's failure to produce Abdullah in Houston.[2] Tex.R.Civ.P. 201(5).

Smith asserts the trial court was justified in requiring Abdullah to appear in Houston, arguing that Abdullah has knowledge of this case and was an ultimate decision-maker in

connection with Smith's representation of Butan Valley. However, these assertions are irrelevant to the issue of where one may take the deposition of a non-party, non-designated agent as set forth in Rule 201(5).

### Tax Returns, Financial Statements, Written Communications and Corporate Resolutions

The second basis for the death penalty sanctions was Butan Valley's failure to produce (1) its financial statements and tax returns for the years 1991, 1992, and 1993, (2) written communications between Osama Alkasabi and Abdullah Alkasabi, and (3) corporate resolutions authorizing Smith to file a lawsuit for Butan Valley.

Since much of the controversy stems from the original answers Butan Valley gave to the requests, we will briefly review them. Butan Valley initially objected to the requests for its financial statements and the written communications on the ground that (1) the request for financial statements sought irrelevant information, and (2) the request for written communications was unduly burdensome and sought irrelevant information. Butan Valley stated "see attached documents" in response to the request for corporate resolutions. With regard to the tax returns, Butan Valley responded that it would produce them "when and if secured." Sometime after these responses and the November 1993 order compelling production, but before the August 18 Discovery Order and the judgment, Butan Valley informed both the court and Smith that it did not have documents responsive to any of these requests. Moreover, in the motion for rehearing filed after the August 18 Discovery Order, Osama filed a sworn affidavit stating that (1) Butan Valley did not prepare financial statements for the years 1991–1993, (2) there were no written or other transcriptions of communications between Osama and Abdullah regarding the subject matter of the lawsuit, (3) no corporate resolutions existed regarding Smith other than the ones already produced, and (4) Butan Valley did not file

---

2. Although it does not impact our decision, we find it noteworthy that Butan Valley offered to produce Abdullah for deposition by telephone both in its response to the motion for entry of judgment and at the hearing on the motion.

tax returns for 1991–1993.[3] In addition, Butan Valley filed supplemental responses to these requests the day of the hearing on the motion for entry of judgment stating that it did not have the documents and offering to take whatever steps necessary to establish that it did not have the documents, including executing authorizations for the IRS and other taxing authorities to search for and release documents to Smith.

■■■■ The record clearly shows that neither the court nor Smith believed Butan Valley's claim that these documents did not exist. However, a party cannot be sanctioned for failing to produce documents when there is no evidence that they exist. *Chrysler Corp. v. Blackmon*, 841 S.W.2d at 850. Since she was the movant for sanctions, it was Smith's duty to prove the documents existed. *See Global Services, Inc. v. Bianchi*, 901 S.W.2d 934, 937 (Tex.1995); *GTE Communications Systems Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex.1993). Neither at the hearing prior to entry of the August 18 Discovery Order nor at the hearing on the motion for entry of judgment did Smith present evidence that the alleged documents existed. Instead, she questioned why Butan Valley did not state from the beginning that the documents did not exist rather than saying so only after the judge ordered it to produce the documents. She also argued that the company had to have financial statements, although she offered no proof that it had any.

We agree that Butan Valley created the dispute when it failed to state in its first response that the documents did not exist. However, Smith still had the burden of proving the documents existed. As the Supreme Court stated recently,

> We recognize that it is often difficult to prove that a party has withheld documents from discovery. Direct evidence of such conduct is seldom available, and it may be necessary to rely entirely on circumstantial evidence. But an imposition of sanctions cannot be based merely on a party's bald assertions. There must be some evidence

of an abuse of discovery before sanctions can be imposed.

*Global Services, Inc. v. Bianchi*, 901 S.W.2d at 938.

■■■■ In short, Smith failed to carry her burden to have sanctions imposed, much less death penalty sanctions, because she did not prove that Butan Valley failed to produce documents in its possession or under its control. Tex.R.Civ.P. 166b(2)(b) (stating that a person is not required to produce a document unless it is within the person's possession). Since Smith failed to carry her burden, the record reveals no prejudice to Smith, and therefore the death penalty sanctions based on this alleged abuse do not meet the first prong of *TransAmerican*. Consequently, we conclude the trial court clearly abused its discretion when it entered death penalty sanctions based on Butan Valley's failure to produce the corporate documents. *See Id.*

## THE SECOND PRONG OF TRANSAMERICAN

The two remaining bases for the imposition of death penalty sanctions were Butan Valley's alleged failure to (1) calculate its damages in the interrogatory answers, and (2) produce Osama for a second deposition, both of which were ordered in the August 18 Discovery Order. As with the first prong, in considering whether the court abused its discretion, we reviewed the entire record before us, which shows the following concerning these two aspects of the order.

With regard to calculation of damages, Smith complained at the August 15 discovery hearing that she could not tell from the interrogatory answers how Butan Valley arrived at its damage figure of $11,000. The August 15 discovery hearing was the first time Smith raised the interrogatory answers to the court as a reason for sanctions. (The interrogatories were not sent until mid-November of 1993, after the first order compelling the production of documents.) The court ordered Butan Valley to respond fully and completely to Smith's interrogatory re-

---

**3.** At the hearing Smith mentioned that Butan Valley did not verify the supplemental responses, however, she never objected to their form.

She also has not raised it as an issue on appeal. Therefore, the issue is not before us.

quests by September 14, 1994. Butan Valley did not file any supplemental answers to the written discovery until the day of the hearing on the motion for entry of judgment, on October 13, 1994, and at that time did not give any additional answers on damages. (Butan Valley merely reiterated that on December 15, 1993 it had produced all checks payable to Smith.)[4]

The court also ordered Butan Valley to produce Osama for a second deposition. The Order stated, "Butan Valley, N.V., shall produce and make available for deposition Osama A.O. Alkasabi ... at One Riverway, Suite 1950, Houston, Texas 77056 on August 31, 1994, or on another mutually agreeable date within 30 days from August 15, 1994."

After the judge entered the August 18 Discovery Order, Smith noticed the second deposition of Osama Alkasabi for August 31, 1994. Smith had alleged at the discovery hearing that she needed this deposition to explain the $2,000 increase in damages and the malpractice cause of action alleged after Butan Valley's original counterclaim.

As noted earlier, Butan Valley filed a motion for protective order and rehearing of the Discovery Order on August 26, 1994. The trial court denied the motion on August 31, 1994, the day Smith had scheduled Osama's deposition. Osama did not appear for the deposition scheduled on August 31, 1994. On September 13, 1994, Butan Valley also attempted one more time to have the August 18 Discovery Order set aside by filing a motion for leave to file a petition for writ of mandamus regarding the Discovery Order with this court, which this court initially granted leave to file on September 13, 1994, and then denied on September 29, 1994. Consequently, between September 13, 1994 and September 29, 1994, the August 18 Discovery Order was stayed.[5]

Butan Valley never produced Osama for deposition before entry of judgment, although in its response to the request for entry of judgment it offered to fly him once again to Houston from Florida for a deposition. The trial court found that Butan Valley wholly failed to comply with its August 18 Discovery Order by refusing to give any additional response to the damage requests and by not producing Osama.

■ Because the trial court imposed a death penalty sanction, we must apply the two part test in *TransAmerican* to determine if the court's action was appropriate. *TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d at 917. Our focus in this portion of the opinion is on the second prong of the test—whether the sanction was excessive. The most important standards to consider in determining whether a sanction is excessive are (1) whether the court considered and/or tested lesser sanctions to see if lesser sanctions would promote compliance and deterrence and discourage further abuse, (2) whether the sanctions are no more severe than necessary to satisfy the legitimate purposes of a sanction (i.e., to secure compliance, to deter others and to punish), and (3) whether Butan Valley's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Chrysler Corp. v. Blackmon,* 841 S.W.2d at 849; *TransAmerican Natural Gas v. Powell,* 811 S.W.2d at 917. We will consider only the second and third standards.

As we noted above, one consideration of the second prong of *TransAmerican* is that sanctions should be no more severe than necessary to satisfy the legitimate purposes of sanctions for discovery abuse. This record does not support the trial court's statements that lesser sanctions would not have promoted compliance or been a more appropriate punishment.

Based on the answers Butan Valley gave to the interrogatories, Smith could tell that (1) Butan Valley was alleging that 85 billed services were unauthorized, (2) the total

---

4. Butan Valley had already informed the court of this fact through Osama's affidavit attached to Butan Valley's motion for reconsideration but it had not previously supplemented its discovery responses with this information.

5. Butan Valley argues that it did not violate the trial court's order to produce Osama because the trial court's order was stayed from September 13 until September 29. We have chosen not to address this issue because we base our conclusion that the trial court abused its discretion on other factors.

hours of the billed services were 84.50, (3) the damages resulting from the 85 alleged unauthorized services were between $8,500 and $10,562.50, depending on the hourly rate charged for the services, and (4) Butan Valley alleged to have paid over $15,000 in attorney's fees when it had only authorized $5,000. In addition, Butan Valley claims that Smith had copies of all checks made payable to her for her services.

Consequently, instead of having a precise dollar figure, Smith had a range between $8,450 and $10,562.50, depending on the hourly rate billed for the alleged unauthorized services.[6] Thus, the overriding consideration before us is that Smith knew, within a range of $2,000, the alleged damages for unauthorized services. In addition, in its response to the motion for entry of judgment, Butan Valley offered to file more specific supplemental responses. Finally, at the October 13 hearing on the motion for entry of judgment, Butan Valley offered to give a very specific answer to the interrogatory within three days of the hearing.

We have also taken notice of the fact that the case was set for trial the week of May 9, 1994 at Smith's request and then set specifically for May 12, 1994. The trial date was continued, but not because Smith filed a motion for continuance claiming that inadequate discovery responses prevented her from preparing for trial.[7] According to Smith, the trial judge continued the May 12 setting when Smith's expert witness could not be present at trial to testify regarding attorney's fees and Butan Valley opposed Smith's motion for leave to designate another expert. We view this as some indication that Smith felt she could adequately prepare for trial based on the pleadings and discovery completed as of May 12. At that time Butan Valley's alleged damages were $9,000 and the counter-claim did not include a claim for malpractice.

These facts lead us to conclude that lesser sanctions would have provided a punishment more commensurate with the offense and probably would have promoted compliance. The court had more than a few options available to it. For example, the court could have imposed a fine ordering Butan Valley to pay Smith's attorney's fees in preparing the motion to compel and the motion for entry of judgment. In addition, the court could have refused to allow Butan Valley to prove damages greater than $9,000 in the event Osama did not explain the basis for the additional damages in his deposition or if Butan Valley did not provide the information through interrogatory answers. Moreover, if the cancelled checks were not produced, the court could have considered this in further limiting the damages Butan Valley could prove. The court also could have let Butan Valley go to trial on all of its causes of action except the malpractice cause of action.

Likewise, the record reflects that lesser sanctions could have promoted compliance and been a more commensurate punishment for Butan Valley's failure to produce Osama for his deposition on August 31, 1994. We reach this conclusion for two reasons. First, Butan Valley's actions do not reflect a total refusal to produce Osama. Butan Valley had already produced him for one deposition. Moreover, in response to the motion for entry of judgment, Butan Valley offered to make Osama available, stating that it would fly him in from Florida at its expense.

Second, Smith's stated reason for wanting to take Osama's deposition again was to ask him about (1) Butan Valley's claim of malpractice, and (2) the increase in damages from $9,000 to $11,000, both of which appeared in one of the amended counterclaims filed after Osama's first deposition. None of these facts, absent something more, warrant death penalty sanctions; as we noted earlier,

---

**6.** Although the interrogatory answers listed the specific services billed, the dates the services were performed and the time spent, an hourly rate is not included on all of the services listed. Also, Smith increased her hourly rate from $100 to $125, all of which account for the range of damages rather than a specific amount.

**7.** On May 11, Smith filed a "motion for leave to designate an additional expert" because her original expert on attorneys fees had to leave the country on May 10 and was unavailable to testify on May 12.

the trial court had other options available to it that could have promoted compliance.

■ Finally, the court's order also violated the third standard of the second prong which states that a death penalty sanction should not be imposed unless the sanctioned party's conduct justifies a presumption that its claims lack merit. *Braden v. Downey*, 811 S.W.2d 922, 929 (Tex.1991); *Chrysler Corp. v. Blackmon*, 841 S.W.2d at 850. Concerning this requirement the Supreme Court has stated the following:

> When a trial court strikes a party's pleadings and dismisses its action or renders a default judgment against it for abuse of the discovery process, the court adjudicates the party's claims without regard to their merits but based instead upon the parties' conduct of discovery. "[T]here are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause."

*TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d at 918 (quoting *Societe Internationale v. Rogers*, 357 U.S. 197, 209–10, 78 S.Ct. 1087, 1094, 2 L.Ed.2d 1255 (1958)). We have outlined previously both Smith's complaints about Butan Valley's inadequate discovery responses and the deficiencies the record shows. We have also recited some of the things Butan Valley offered to do at the motion for entry of judgment such as flying Osama in for a second deposition, producing Abdullah telephonically for deposition, giving more specific interrogatory answers within three days of the hearing and authorizing the IRS and other agencies to search for and release any documents they had that were responsive to the discovery requests. We do not believe this record justifies a presumption that Butan Valley's claims lack merit.

## CONCLUSION

In conclusion, we find that the trial court's imposition of death penalty sanctions did not meet the standards set out in *TransAmerican, Braden v. Downey*, and *Chrysler Corp.*, and therefore that the trial court abused its discretion in entering death penalty sanctions. Having said this, we acknowledge that Butan Valley's actions were not without reproach and warranted some action by the court.

We sustain Butan Valley's point of error and reverse the judgment and remand the cause for further proceedings consistent with this opinion.

O'NEILL, Justice, dissenting.

Focusing on appellant's failure to respond to Interrogatory No. 21, I would hold that the discovery order dated August 18, 1994, was sufficient to satisfy the *TransAmerican* requirements for the imposition of death penalty sanctions. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991). The majority concludes that the imposition of death penalty sanctions in this case was excessive, and recites the following elements that must be considered in making this determination:

> (1) whether the court considered and/or tested lesser sanctions to see if lesser sanctions would promote compliance and deterrence and discourage further abuse, (2) whether the sanctions are no more severe than necessary to satisfy the legitimate purposes of a sanction (i.e., to secure compliance, to deter others and to punish), and (3) whether Butan Valley's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit.

However, the majority only considers the second and third elements. I would review all three to determine whether the death penalty sanctions were excessive. Specifically, with regard to the first element, based upon the particular record before us I would follow the First Court of Appeals and hold that "an order to compel joined with a statement that noncompliance would result in dismissal constitute[s] a lesser sanction." *See Andras v. Memorial Hosp. System*, 888 S.W.2d 567, 572 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Jaques v. Texas Employers' Ins. Ass'n*, 816 S.W.2d 129, 131 (Tex.App.—Houston [1st Dist.] 1991, no writ) (holding that if party failed to comply with discovery order with full knowledge of the death penalty consequences, such sanctions would be appropriate); *GTE Mobilnet of*

*South Texas Limited Partnership v. Telecell Cellular, Inc.,* No. 01–94–00760–CV, —— S.W.2d —— [1995 WL 500408] (Tex.App.—Houston [1st Dist.] August 24, 1995, no writ).

This case is analogous to the situation presented in *Jaques,* 816 S.W.2d 129. There the court granted Texas Employers' Insurance Association's motion to compel and ordered Jacques to answer three interrogatories within thirty days. Jacques did not re-answer the interrogatories, and a motion for sanctions was filed. In his written response to the motion for sanctions, Jacques stated, "plaintiff herein stands by his previous responses," and made the same arguments that had been rejected by the trial court when it ordered Jacques to re-answer. The trial court ordered Jacques' pleadings stricken and the case dismissed. On appeal Jacques argued that he should not have been required to answer the interrogatories because he had good reasons for not answering them. Although the court of appeals reversed the trial court for failing to consider lesser sanctions, it stated: "[i]f Jaques failed to comply with that order, with full notice of the 'death penalty' consequences, we believe such sanctions would be appropriate."

In the present case, Smith's Interrogatory No. 21 requested the manner in which Butan calculated its alleged damages. Butan responded with a reference to its answers to Interrogatories 5, 8 and 13. None of these responses indicated the manner in which Butan calculated its damages.[1] The August 18, 1994, discovery order specifically ordered Butan to "state the manner of calculation of damages Butan Valley, N.V., claims 'in an amount not less than $9,000' (Int. No. 21)." The court further stated that if Butan did not timely comply, the court would strike "[Butan's] answer and counterclaim, and enter judgment for [Smith]." The court gave Butan until September 15, 1994, to comply with the order. However, Butan failed to supplement its answer to the interrogatory until the day of the hearing on Smith's motion to strike pleadings, October 13, 1994. Even then, Butan filed *the exact same response* to the interrogatory. In filing the exact same response I believe Butan, like Jacques, elected to stand on its previous responses. Because he was clearly warned of the death penalty consequences that would result if he failed to amend, I believe, like the First Court of Appeals, that the order to compel was a lesser sanction.

Regarding the second element of the *TransAmerican* analysis, I believe that the take nothing judgment on Butan's counterclaim was no more severe than necessary to satisfy the legitimate purpose of the sanction. The August 18th discovery order stated that if Butan did not timely comply, the court would strike "*its answer and counterclaim,* and enter judgment for [Smith] without further notice." (emphasis added). Because Smith was not told how Butan would calculate its damages, the court found that Smith would be prejudiced by proceeding to trial on the counterclaim. The court therefore struck just Butan's claim for affirmative relief, not its answer to Smith's suit. Because Butan was the counter-plaintiff with unique knowledge of how it would calculate its damages, yet refused to do so, I do not believe that the sanction was more severe than necessary to satisfy the legitimate purpose of the sanction.

Finally, as to the third element, Butan Valley elected to stand on its original response even though warned of the death penalty consequences. The request for Butan's damages calculation contained in Interrogatory No. 21 was (1) proper, (2) central to Smith's defense of the counterclaim, (3) clear and unambiguous, (4) unobjected to, and (5) easily answerable, as admitted by Butan. Under these circumstances, where the order

---

1. Although the majority finds that, based on Butan's answers to the prior interrogatories, Smith "could tell" the range of Butan's damages, I do not believe that this statement is relevant or true. Although one can examine Butan's responses, make several assumptions and speculate on the range of Butan's alleged damages, I do not believe that Smith should be required to do so. It was not Smith's duty to discern from the prior answers what Butan's calculation of damages might be. The Texas Rules of Civil Procedure entitle her to a sworn answer to her interrogatory, even if that answer contained only a range of Butan's alleged damages. The trial court apparently agreed, stating: "You can't tell her how she owes this money?" and "you didn't tell them what they're asking about with respect to where this $11,000.00 came from."

to compel contained a clear statement that noncompliance would result in death penalty sanctions, and where Butan nonetheless elected to stand on its previous responses to the interrogatories, I believe that the court was justified in presuming that Butan's counterclaim had no merit.

For the foregoing reasons I would affirm the judgment of the trial court.