# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00384-CV

**Crystal Bingham Hernandez, Appellant**

**v.**

**Tiffany Polley, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 2 OF TOM GREEN COUNTY,
### NO. 12C482-L2, HONORABLE PENNY ANNE ROBERTS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Crystal Bingham Hernandez appeals from the trial court's judgment dismissing her case with prejudice as a sanction for failure to comply with a court order to respond to written discovery propounded by Tiffany Polley. For the reasons that follow, we reverse and remand.

## BACKGROUND

Following an automobile accident in 2010, Hernandez sued Polley and Patricia Michelle Rose in 2012, alleging that Rose had negligently rear-ended her vehicle and that Polley had negligently entrusted her vehicle to Rose.[1] In 2011, Polley's automobile insurer, Reinsurance Company of America (RCA), was placed into liquidation proceedings by an Illinois

---

[1] Following dismissal of Hernandez's claims against Polley, the trial court severed her claims against Rose, making the judgment dismissing her claims against Polley final. Hernandez's claims against Rose are therefore not at issue in this appeal.

court and designated an "impaired insurer" by the Texas Commissioner of Insurance pursuant to the Texas Property and Casualty Insurance Guaranty Act. *See* Tex. Ins. Code §§ 462.001–.351 (the Guaranty Act). As a result, the Texas Property & Casualty Insurance Guaranty Association (TPCIGA) became responsible for the administration of claims filed against parties insured by RCA, including Hernandez's claims against Polley. *See generally id.* §§ 462.301–.311 (setting out TPCIGA's duties relating to covered claims). Under the Guaranty Act, a plaintiff asserting a claim against an impaired insurer or its insured must first exhaust her rights under any other insurance available to her, and the amount payable by TPCIGA and the liability of the insured defendant are reduced by the full applicable limits of the plaintiff's other insurance. *See id.* §§ 462.251–.253. In March 2013, Polley served discovery on Hernandez seeking to determine the total amount of money paid on behalf of Hernandez by any other insurance policy. Among the discovery requests were that Hernandez sign an Affidavit Regarding Other Insurance stating the total amount of benefits received for injuries and other damages caused by the accident with Rose and that she provide Explanation of Benefits (EOB) documentation from any insurance companies making such benefit payments.

In July 2013, Polley filed a motion to compel and plea in abatement. Polley asked the court to compel Hernandez to provide complete answers to discovery and to abate the proceeding until Hernandez had complied. On September 19, 2013, Hernandez filed responses to Polley's request for production that included an executed Affidavit Regarding Other Insurance and an executed authorization for release of protected health information. Although the affidavit was otherwise completed and notarized, Hernandez failed to fill in a blank on the affidavit asking for the total dollar amount of benefits received through other insurance policies. On September 27, 2013,

2

the trial court signed an agreed order granting Polley's motion to compel and plea in abatement and requiring Hernandez to produce "satisfactory responses to Defendant's Request for Production and First Set of Interrogatories, including the properly executed Affidavit Regarding Other Insurance and attachments . . . as well as any and all Explanation of Benefit documentation." On June 6, 2014, Polley filed a motion to dismiss and for sanctions, asking the trial court to dismiss Hernandez's claims for failure to comply with the agreed order and to order Hernandez to pay Polley's attorneys fees, expenses of discovery, and taxable court costs.

A hearing was held on Polley's motion to dismiss and for sanctions on October 7, 2014. Counsel for Polley announced that Hernandez had just produced the applicable insurance policy, that there remained outstanding requests, and that the parties had reached an agreement that Hernandez would produce the remaining documents by November 17, 2014. Hernandez's attorney explained that he had been working to get the requested information and that "today we have identified . . . some items outside of the agreed order" that still needed to be produced. He further stated that he had identified three sets of documents—medical records—that were necessary to comply with all of Polley's requests. Counsel for Polley did not dispute that statement but added, "And the fourth was given to me a moment ago."[2] Based on these representations by counsel, the trial court did not rule on the motion to dismiss and for sanctions but orally warned counsel for Hernandez that "if [Polley's attorney] doesn't have everything he should

---

[2] Counsel for Hernandez later reiterated: "Just to make it very clear, it's three sets of records. One is La Esperanza medical records, one is La Esperanza medical bills, and then the other one's Del Mar bills. . . . And everything else has been complied with, there's nothing else." Polley's attorney did not dispute this statement.

3

have under the prior motions and by [the agreed date], I'm going to grant his motion to dismiss."

The trial court then added:

> I understand that you are at the mercy of others when you try to get requests for documents, but a year is more than enough time. . . . I'm going to revisit his motion, and I'm more than likely based on today looking at the file, I'm going to grant his motion, but I'll certainly listen to things, but its just past time for him to be given his information.

There was no discussion at the hearing concerning the Affidavit Regarding Other Insurance or any EOB documentation.

The next day, Hernandez filed a response to Polley's motion to dismiss and for sanctions. Attached to the response were the medical records discussed at the hearing, EOB documentation from NexClaim Recoveries on behalf of WEB-TPA Employer Services, LLC, and from Cigna, and the Affidavit Regarding Other Insurance.[3] The documentation from Cigna included a cover letter transmitting an EOB form reflecting the amount paid by Cigna and the amount owed by Hernandez. The documentation from NexClaim consisted of a cover letter stating that WEB-TPA had paid $2,840.24 on behalf of Hernandez and a Claim History itemizing the provider names, dates of service, and amounts the insurer paid. At the top of the Claim History was the handwritten figure of $2,840.24. The affidavit was unchanged from the prior production and still contained a blank for the amount paid on behalf of Hernandez by any other insurance company.

---

[3] In prior responses to Polley's request for production, Hernandez had identified WEB-TPA and Cigna as having paid some medical expenses.

A second hearing on Polley's motion to dismiss and for sanctions was held on January 8, 2015. Hernandez's attorney contended that he had produced the medical records discussed at the prior hearing and "everything else" had been provided. Counsel for Polley stated that there were "two things that [were] missing that are critical." He explained that the missing documents were a fully completed affidavit stating the amount received from other insurance—the affidavit still contained a blank—and EOB documentation. Specifically, he sought an actual EOB form from WEB-TPA and EOB documentation for treatment subsequent to the date of the accident.

Hernandez's attorney responded that Polley had not complained about the blank at the last hearing, that he had provided documentation from which the amount that belonged in the blank could be determined and thought he "got it on the record," that it was made clear at the prior hearing that only three sets of medical records remained outstanding, that he was of the understanding that all discovery requests had been satisfied, that he did not understand that the affidavit was insufficient, and that he would have his client go through the documentation and calculate the amount and put a specific amount in the blank if necessary. He also explained that he had requested an EOB from WEB-TPA and produced what they sent, which stated the amount paid on behalf of Hernandez. He added that Hernandez had lost her insurance and there were no additional payments or EOB documents.[4] After clarifying that there were only two items at issue, the trial court told Hernandez's attorney that Hernandez's answer was not sufficient, that it did not understand why she was unable to produce the requested documents when the case had been pending

---

[4] Counsel for Hernandez also stated that "[i]f and when the abate order is lifted, we can do depositions, [and Polley's attorney] can discover all that information."

for quite some time, and that "sometimes your client's responses were sloppy, sometimes they were inaccurate, and sometimes they were incomplete." In making its ruling, the trial court stated to Polley's attorney:

> I feel like there's been more than enough time for you, as the defendant, to have received the information that you asked for. This case was filed quite sometime ago; however, I am not going to give you sanctions against [Hernandez's attorney]. Sometimes herding a client is like herding cats. I am, however, going to grant your motion to dismiss. . . . I am not going to order that plaintiff must pay any attorneys fees and costs for preparing litigation for this motion. I feel like dismissing the case was a big enough sanction . . . .

Following the hearing, the trial court signed an order clarifying that Hernandez's claims against Rose were not dismissed and an order severing the claims against Rose, which adopted and incorporated its ruling on Polley's motion to dismiss and for sanctions and rendered final judgment dismissing with prejudice Hernandez's claims against Polley. The trial court entered findings of fact, which recited the procedural history, and a single conclusion of law that essentially recited Rule 215.2. *See* Tex. R. Civ. P. 215.2(b) (setting out available sanctions for failure to comply with proper discovery request or order to provide discovery). Hernandez proposed an amendment to the fact findings, stating that her claims against Rose were not dismissed and specifying the discovery that was not produced, and an amended conclusion of law stating that the trial court ordered Hernandez to produce certain documents and orally warned her that failure to comply could result in dismissal and that Hernandez continued to fail to produce some documents and information. The proposed amended conclusion of law also recited only that portion of Rule 215.2 providing for dismissal. *See id.* R. 215.2(b)(5). The trial court amended the findings of fact to reflect that

6

Hernandez's claims against Rose were not dismissed, but declined to specify the discovery that was not produced, and amended the conclusion as requested. Hernandez objected to the amended findings of fact and conclusions of law and filed a motion for new trial, which appears to have been overruled by operation of law. Hernandez then filed this appeal.

## DISCUSSION

In her first issue, Hernandez argues that the trial court abused its discretion in issuing a death penalty discovery sanction. We review a trial court's imposition of sanctions for an abuse of discretion. *American Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam) (citing *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004)). We make that determination based on our independent review of the entire record. *Id.* (citing *Chrysler Corp. v. Blackmon*, 841 S.W.2d 844, 852 (Tex. 1992). "The legitimate purposes of discovery sanctions are threefold: 1) to secure compliance with discovery rules; 2) to deter other litigants from similar misconduct; and 3) to punish violators." *Blackmon*, 841 S.W.2d at 849. However, discovery sanctions must also be "just." Tex. R. Civ. P. 215.2(b) (requiring that sanctions order be just); *Blackmon*, 841 S.W.2d at 849; *TransAmerican Nat. Gas Corp. v. Powell* , 811 S.W.2d 913, 917 (Tex. 1991) (orig. proceeding).

The Texas Supreme Court has established a two-part test to determine whether a sanction is just. *See TransAmerican*, 811 S.W.2d at 917; *see also American Flood*, 192 S.W.3d at 583 (explaining *TransAmerican* two-part test). First, a direct relationship must exist between the offensive conduct and the sanction imposed. *American Flood*, 192 S.W.3d at 583. "This means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the

7

innocent party. It also means that the sanction should be visited upon the offender." *TransAmerican*, 811 S.W.2d at 917. "The trial court must at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both." *Id.* Second, sanctions must not be excessive; in other words, the punishment should fit the crime. *Id.* A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purposes. *Cire*, 134 S.W.3d at 839; *TransAmerican*, 811 S.W.2d at 917. The record must reflect that the trial court considered the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993). The trial court does not need to test the effectiveness of all available lesser sanctions by actually imposing them before issuing the death penalty but must "analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed." *Cire*, 134 S.W.3d at 840.

"[C]ase-determinative sanctions may only be imposed in 'exceptional cases' where they are 'clearly justified' and it is 'fully apparent that no lesser sanctions would promote compliance with the rules.'" *Id.* (quoting *GTE*, 856 S.W.2d at 729–30). "Although punishment and deterrence are legitimate purposes for sanctions, they do not justify trial by sanctions." *TransAmerican*, 811 S.W.2d at 918 (internal citations omitted). Sanctions that are so severe as to preclude presentation of the merits of a party's case "should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.* Moreover, a "death penalty" sanction should not be used unless the party's actions justify a presumption that the case lacks merit. *Id.* However, a party's refusal to produce material evidence, despite the

8

imposition of lesser sanctions, may warrant the presumption an asserted claim lacks merit and permit the trial court to dispose of it. *See Cire*, 134 S.W.3d at 839 (citing *TransAmerican*, 811 S.W.2d at 918).

Here, there is nothing in the record to show that the trial court adhered to the first prong of the *TransAmerican* test, which requires a direct relationship among the conduct, the offender, and the sanction imposed. There is nothing in the record to indicate, and the trial court did not inquire, whether Hernandez or her attorney was responsible for the incomplete discovery responses, and there is therefore no evidence that the sanctions were visited on the actual offender. *See Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003) (per curiam) (holding that trial court did not properly apply first prong of *TransAmerican* test where there was no evidence in record of whether client or counsel was responsible for discovery abuse and noting that neither trial court nor court of appeals discussed whether counsel or client was responsible); *TransAmerican*, 811 S.W.2d at 918, 920 (granting mandamus compelling trial court to set aside order issuing death penalty sanction where it was not clear whether party or counsel or both should be faulted for party's failure to attend deposition); *Sosa v. Union Pac. R.R. Co.*, No. 13-13-00257-CV, 2015 Tex. App. LEXIS 4866, at *19–26 (Tex. App.—Corpus Christi May 14, 2015, pet. filed) (mem. op.) (holding that trial court abused discretion in dismissing plaintiffs' case where only evidence clients were involved in misconduct of attorney was implication based on length of attorney-client relationship); *In re Barnes*, 956 S.W.2d 746, 748 (Tex. App.—Corpus Christi 1997, orig. proceeding) (holding that sanction failed to meet *TransAmerican* requirement that it be just because trial court made no attempt to determine offending party). Rather, the trial court here appeared only to assume that Hernandez and

9

not her attorney was the problem, as indicated by its reference to "herding" clients. While "a lawyer cannot shield his client from sanctions, . . a party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted counsel its legal representation." *TransAmerican*, 811 S.W.2d at 917; *see Sosa*, 2015 Tex. App. LEXIS 4866, at \*25–26. We conclude that the trial court failed to properly apply the first part of the *TransAmerican* test by failing to even attempt to ascertain whether Hernandez or her attorney was the offending party prior to dismissing the case. *See Spohn Hosp.*, 104 S.W.3d at 882; *TransAmerican*, 811 S.W.2d at 917.

We also conclude that the trial court failed to adhere to the second part of the *TransAmerican* test, which requires that the sanction not be excessive. *See TransAmerican*, 811 S.W.2d at 917. The parties join issue on whether the trial court considered lesser sanctions prior to imposing the death penalty sanction. Although no other lesser sanctions were imposed, the record reflects that at the first hearing following the agreed order to compel, the trial court issued an oral warning that failure to fully comply with the discovery requests by the agreed date could result in dismissal. Texas courts have recognized a distinction between a mere order compelling discovery responses without a warning of dismissal and an order to compel containing a warning, concluding that the former does not constitute a lesser sanction while the latter does. *See, e.g.*, *Romero v. Kroger Tex., L.P.*, No. 01-12-00049-CV, 2013 Tex. App. LEXIS 14734, at \*10–11 (Tex. App.—Houston [1st Dist.] Dec. 5, 2013, no pet.) (mem. op.) (concluding that trial court did not abuse discretion in dismissing claims where order warned of dismissal); *Wade v. Farmers Ins. Grp.*, No. 14-01-00691-CV, 2002 Tex. App. LEXIS 4691, at\*13–17 (Tex. App.—Houston [14th Dist.] June 27, 2002, no pet.) (not designated for publication) (noting distinction between orders

10

compelling discovery with and without warnings and concluding that order to compel with warning was lesser sanction); *Jaques v. Texas Emp'rs Ins. Ass'n*, 816 S.W.2d 129, 131 (Tex. App.—Houston [1st Dist.] 1991, no writ) (stating that if trial court had issued order to compel discovery with warning that pleadings would be stricken for non-compliance, and party had failed to comply, death-penalty sanctions would have been appropriate).

Some courts have determined that an oral warning constituted a lesser sanction on facts including multiple orders and/or the imposition of other lesser sanctions. *See, e.g.*, *Paradigm Oil, Inc. v. Retamco Operating, Inc.*, 161 S.W.3d 531, 539 (Tex. App.—San Antonio 2004, pet. denied) (upholding death penalty sanction where trial court issued two orders compelling discovery, imposed monetary sanction, and stated that if party did not comply, its answer would be stricken); *Hartbrich v. Vance*, No. 03-01-00635-CV, 2002 Tex. App. LEXIS 7937, at *9–10 (Tex. App.—Austin Nov. 7, 2002, no pet.) (not designated for publication) (upholding death penalty where trial court ordered payment of attorney's fees and trial court informed party that if she did not respond to discovery, her pleadings would be stricken). Others have construed an oral warning, standing alone, as a lesser sanction. *See e.g.*, *Jackson v. Jackson*, No. 01-05-00194-CV, 2006 Tex. App. LEXIS 10290, at *28–29 (Tex. App.—Houston [1st Dist.] Nov. 30, 2006, no pet.) (mem. op.) (stating that where trial court "compels discovery and also cautions that more serious sanctions will issue unless compliance occurs, orders granting more serious sanctions, including death-penalty sanctions, will be upheld").

Assuming without deciding that an oral warning alone can constitute a lesser sanction, we conclude that the trial court's warning did not constitute a lesser sanction in this case. The trial

11

court's order here followed only one *agreed* order compelling discovery and was far from unequivocal. Although the trial court initially stated that if Hernandez failed to comply, it would grant Polley's motion to dismiss, it later qualified that warning by saying it was "more than likely . . . going to grant [the] motion, but [would] certainly listen to things . . . ." The trial court's statements were substantially different from an order—or even an oral warning—expressly stating that the result of noncompliance *will* be dismissal. *See Blackmon*, 841 S.W.2d at 850 (holding that potential exposure to substantial fine was not lesser sanction); *Wang v. Rao*, No. 13-96-00346-CV, 1998 Tex. App. LEXIS 2595, at *12 (Tex. App.—Corpus Christi April 30, 1998, no pet.) (not designated for publication) (concluding that phrase "risk danger of having pleading stricken" is not notice pleading will be stricken for noncompliance and cannot be regarded as lesser sanction); *cf. Romero*, 2013 Tex. App. LEXIS 14734, at *10–11 (holding that trial court did not abuse discretion by dismissing claims where party failed to comply with order stating that if he failed to respond, "Plaintiffs' pleadings *will be stricken*.") (emphasis added); *Jackson*, 2006 Tex. App. LEXIS 10290, at *28–29 (holding trial court did not abuse discretion in issuing death penalty sanction where trial court cautioned that more serious sanction *will issue* unless party complied); *Paradigm Oil*, 161 S.W.3d at 539 (upholding as lesser sanction order that if party did not comply with order, its answer *would be stricken*); *Hartbrich*, 2002 Tex. App. LEXIS 7937, at *4–5, 9–10 (same); *Allied Res. Corp. v. Mo-Vac Serv. Co.*, 871 S.W.2d 773, 778–79 (Tex. App.—Corpus Christi 1994, writ denied) (holding order stating pleadings "will be stricken and judgment by default will be granted" was "unambiguous" and "self-executing"); *see also Wang*,

1998 Tex. App. LEXIS 2595, at *12 (explaining holding in *Allied Res* and stating that court in that case found language "unequivocal and self-executing").

Further, even assuming the trial court here satisfied the *TransAmerican* requirement to consider lesser sanctions, on these facts, dismissal was a more severe sanction than was necessary to satisfy the legitimate purposes of sanctions for discovery abuse. *See Cire*, 134 S.W.3d at 839; *TransAmerican*, 811 S.W.2d at 917. The parties signed an agreed order requiring Hernandez to provide satisfactory discovery responses and to produce, among other documents, an Affidavit Regarding Insurance and EOB documentation. The record does not contain a reporter's record from any hearing on the agreed order, and none is reflected on the docket sheet. Thus, it appears that the trial court's first involvement was the first hearing following entry of the agreed order. At that hearing, it was made clear on the record that only three sets of medical records were outstanding; Polley complained of no other missing documents.

By the time of the final hearing, Hernandez had produced the three sets of medical records; an executed affidavit, leaving blank the total amount of benefits received from insurance; an EOB form from Cigna; and a letter and Claim History from WEB-TPA reflecting the amount of benefits paid on behalf of Hernandez. Counsel for Hernandez also informed the trial court that Hernandez had lost her insurance and that there were no additional EOB forms. He further explained that he believed he had provided the information requested in the affidavit and offered to have Hernandez determine the total amount of benefits paid on her behalf and fill in the blank in the affidavit. Moreover, Hernandez provided Polley with an authorization for the release of her protected health information, allowing Polley to independently obtain EOB and other documentation.

13

The record thus reflects that Hernandez made substantial efforts to comply, and her conduct in providing "sometimes sloppy, sometimes inaccurate, and sometimes incomplete" discovery responses does not rise to the level of "flagrant bad faith," nor does her attorney's conduct indicate "callous disregard for the responsibilities of discovery under the rules." *See Blackmon*, 841 S.W.2d at 850 (concluding that death penalty was more severe than necessary where sanctioned party produced numerous documents in response to multiple discovery requests and parties disputed whether all requests had been satisfied but there was no evidence of bad faith or callous disregard for obligations of discovery); *TransAmerican*, 811 S.W.2d at 918–19 (holding that death penalty sanction was not justified by party's failure to appear at deposition); *In re West Star Trucks US, Inc.*, 112 S.W.3d 756, 766 (Tex. App.—Eastland 2003, orig. proceeding) (holding that case-determinative sanction was excessive where sanctioned party partially complied with trial court's order compelling discovery); *cf. Cire*, 134 S.W.3d at 838–39 (holding that imposition of death penalty was not excessive where sanctioned party "flagrantly violated" four discovery orders, violated an order to pay attorney's fees, refused to answer deposition question, gave conflicting testimony under oath, and destroyed evidence, and where there was evidence party was "habitual liar"); *Andras v. Memorial Hosp. Sys.*, 888 S.W.2d 567, 572 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (holding that sanction of dismissal was not too severe where sanctioned parties violated three orders, informed trial court they would not produced requested documents that "went to the heart of the claim and the defense," and refused to do so). The facts before us lead us to conclude that lesser sanctions would have provided a punishment more fitting the offense that would have likely

promoted compliance.[5]  *See TransAmerican*, 811 S.W.2d at 917; *Butan Valley N.V. v. Smith*,

921 S.W.2d 822, 831 (Tex. App.—Houston [14th Dist.] 1996, no writ) (holding that record did not

support trial court's statement that lesser sanctions would not have been more appropriate or

promoted compliance).  Hernandez's compliance was nearly complete, and lesser sanctions, such

as imposing a monetary sanction, ordering Hernandez to pay the fees and expenses Polley had

incurred in seeking compliance with discovery, or holding her in contempt would have likely

achieved full compliance.  *See Butan Valle*y, 921 S.W.2d at 832–33 (concluding that party's failure

to produce witness for second deposition was not total refusal to comply and that despite trial court's

warning of dismissal in order compelling discovery, other lesser sanctions would have provided

punishment more commensurate with offense and probably would have promoted compliance).

In addition, the trial court's order contained no reasoned explanation as to why the

death penalty was appropriate.  *See Cire*, 134 S.W.3d at 840.  The only indication in the record of

the trial court's basis for issuing the death penalty is that it appeared to assume that the "sloppy,

incomplete, and inaccurate" responses were Hernandez's fault and did not want to punish her

attorney.  It offered no explanation of why the death penalty was appropriate, as opposed to imposing

a monetary sanction, ordering her to pay Polley's attorney's fees, or holding her in contempt of court,

especially in light of Hernandez's near compliance.  *See Spohn Hosp.*, 104 S.W.3d at 883 (noting

record should "contain some explanation of the appropriateness of the sanctions imposed); *cf. Cire*,

134 S.W.3d at 842 (upholding death penalty sanction where trial court's order contained extensive,

---

[5] When deciding to dismiss the case, the trial court stated that it would not impose a sanction of attorney's fees because "dismissing the case was a big enough sanction."  Thus, rather than seeking the least severe sanction necessary, the trial court expressly chose a more severe sanction.

15

reasoned explanation of appropriateness of sanction and demonstrating why lesser sanctions would not suffice). Thus, the order does not meet this requirement of the *TransAmerican* test. *See id.* at 840, 842.[6]

Finally, having already determined that Hernandez's compliance was nearly complete and that her conduct does not rise to the level of bad faith, we likewise conclude that her actions do not justify a presumption that the case lacks merit. *See TransAmerican*, 811 S.W.2d at 918. Nor does the fact that the discovery in dispute concerns evidence of other insurance justify such a presumption. Polley argues that because Hernandez's claim against her is covered by the Guaranty Act and defended by TPCIGA, she must provide information concerning benefits paid by other insurance before bringing a claim against Polley. However, Polley cites no authority in support of that argument, and we are aware of none. Further, we disagree with Polley's construction of the Guaranty Act.[7] Section 462.251 provides that a person who has a claim against an insured who is

---

[6] Polley concedes that the trial court offered no reasoning for its ruling but argues that Hernandez has waived any error in this regard by failing to object to the form of the order. *See* Tex. R. App. P. 33.1 Assuming without deciding that a trial court's failure to provide a reasoned explanation for imposing the death penalty sanction can be waived under *TransAmerican* and its progeny, we would nonetheless conclude that Hernandez's request for amended findings of fact and conclusions of law stating the specific discovery not produced is a sufficient request for an explanation of why the death penalty was justified. *See Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 131 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (holding that counsel's oral request that trial court indicate "which facts were misrepresented" preserved for appellate review trial court's failure to specify acts on which Rule 13 sanction was based). Further, even if Hernandez had waived this argument, the trial court's order failed to meet the *TransAmerican* standards in several other regards, as discussed herein.

[7] Statutory construction is a question of law that we review de novo. *See Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011). Our primary concern is the express statutory language. *See Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). We apply the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context or the plain meaning

covered by the Guaranty Act, and who also has a claim under another insurance policy, must "first exhaust [her] rights under" the other insurance policy. Tex. Ins. Code § 462.251(a).[8] Sections 462.252 and 462.253 provide that the amount payable by TPCIGA and the liability of the insured defendant are reduced by the full applicable limits of the plaintiff's other insurance. *Id.* §§ 462.252, .253. Thus, while the Guaranty Act requires that a plaintiff exhaust her rights under other policies before *recovering* against a party covered under the Act and that her recovery will be reduced by the amount of benefits paid by other insurance, it does not expressly provide that she must determine or prove the amount of other insurance prior to or as a prerequisite to *filing suit*. *See id.*§§ 462.251–.253; *Railroad Comm'n v. Texas Citizens for a Safe Future & Clean Water*, 336 S.W.3d 619, 624 (Tex. 2011); *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010); *Galbraith Eng'g Consultants, Inc. v. Pochucha*, 290 S.W.3d 863, 867 (Tex. 2009). Nor does

---

leads to absurd results. *Marks v. St. Luke's Episcopal Hosp.*, 319 S.W.3d 658, 663 (Tex. 2010). "We generally avoid construing individual provisions of a statute in isolation from the statute as a whole," *Texas Citizens*, 336 S.W.3d at 628, and we must consider a provision's role in the broader statutory scheme, *see 20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008).

[8] Section 462.251(a) of the Guaranty Act provides in full:

Any person who has a claim under an insurance policy, other than an impaired insurer's policy, and whose claim arises from the same facts, injury, or loss giving rise to a claim against an impaired insurer or the insurer's insured, must first exhaust the person's rights under the insurance policy, including:

(1) a claim for benefits under a workers' compensation insurance policy or a claim for indemnity or medical benefits under a health, disability, uninsured motorist, personal injury protection, medical payment, liability, or other insurance policy; and

(2) the right to defense under the insurance policy.

Tex. Ins. Code § 462.251.

it require that a plaintiff produce any particular forms related to other insurance in order to bring suit against a party defended by TPCIGA. *See generally* Tex. Ins. Code §§ 462.001–.351; *Cortinas v. Lopez*, No. 13-14-00242-CV, 2014 Tex. App. LEXIS 13194, at *17 n.7 (Tex. App.—Corpus Christi Dec. 10, 2014, pet. denied) (mem. op.) (concluding that Guaranty Act does not require plaintiff to produce such documents as EOB forms or releases of assignments of lien in order to bring suit against party defended by TPCIGA). Because the amount of benefits paid to Hernandez by other insurance goes to the amount she may recover, and not to the merits of her claims against Polley, any payment of benefits by other insurance does not justify a presumption that her case has no merit. *See TransAmerican*, 811 S.W.2d at 918. Nor did Hernandez "refuse" to produce material evidence so as to justify such an assumption. *See id.* (holding that if party refuses to produce material evidence, despite imposition of lesser sanctions, court may presume asserted claim lacks merit and dispose of it); *cf. Andras*, 888 S.W.2d at 572 (upholding death penalty sanction where party expressly refused to produce material evidence).

On the record before us, we conclude that the trial court's dismissal of Hernandez's claims failed to meet the two-part test set out in *TransAmerican* and therefore the trial court abused its discretion in dismissing Hernandez's claims. We sustain Hernandez's first issue.[9]

## CONCLUSION

Having determined that the trial court abused its discretion in dismissing Hernandez's claims, we reverse the judgment of the trial court and remand for further proceedings.

---

[9] Because our resolution of Hernandez's first issue is dispositive, we need not reach her second issue, in which she argues that the trial court erred in failing to amend it findings of fact and conclusions of law to specify the discovery not produced. *See* Tex. R. App. P. 47.1.

18

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Remanded

Filed:   August 30, 2016

19