# Supreme Court of Texas

---

No. 22-0321

---

In re Liberty County Mutual Insurance Company and
Marianne Michele Cagle,

*Relators*

---

On Petition for Writ of Mandamus

---

**PER CURIAM**

Following a car wreck in April 2017, Thalia Harris settled with the other driver for his policy limits. Harris then sued her insurer for underinsured motorist (UIM) benefits. The insurer disputed the amount of Harris's alleged damages and sought production from her primary care physician of Harris's medical records. The request covered a time period of fifteen years—later narrowed to ten years—during which Harris was involved in five other car accidents, some of which caused injuries similar to those she sustained in the April 2017 accident. Harris moved to quash the discovery and for sanctions. The trial court granted the motion and ordered the insurer's counsel to pay $2,000 as a sanction. The insurer seeks a writ of mandamus, asserting the trial court abused its discretion by quashing the requested discovery. We agree and conditionally grant the writ.

Thalia Harris was driving in April 2017 when a car driven by Darien Haynes veered from an adjacent lane and struck her car. Harris alleges that she incurred $17,632.60 in past medical expenses because of the accident and will incur over $265,000 in future medical expenses, plus additional damages. Harris sued Haynes, who ultimately offered his liability policy limits of $100,000 to settle. Harris accepted with the permission of her insurer, Liberty County Mutual Insurance Company. Harris then asked Liberty to pay her alleged damages in excess of $100,000 under the UIM provision in her policy. Liberty refused, so Harris sued Liberty and the adjuster assigned to her claim, alleging violations of the Insurance Code[1] and seeking a declaration of her entitlement to UIM benefits.

During a deposition taken in her lawsuit against Haynes, Harris testified that her "head hit the steering wheel" and that she "injured my right shoulder and then my back." In support of her damages claims, Harris filed billing affidavits and records from several medical providers. She also produced a "Plan of Anticipated Future Medical Expenses" in support of some of her future medical expenses that she attributes to the April 2017 accident. According to the future-care plan, the April 2017 accident caused injuries to Harris's "cervical spine (neck, including headaches and radiation of pain into her extremities—including her arm and shoulder), her thoracic spine (middle back), her lumbar spine (lower back, including radiation of pain into her extremities—including her right foot) and her right shoulder."

---

[1] Harris's extra-contractual claims were abated by agreement until her declaratory-judgment claim is decided.

The record shows that Harris was involved in multiple other car accidents both before and after the April 2017 accident, some of which caused injuries like the ones she alleges were caused by the April 2017 accident:

- Harris was in a car accident in March 2015. She testified by deposition that she recalled only that she had been in a car accident before April 2017 but did not recall when or any specifics.

- Two months after the April 2017 accident, Harris was in another car accident. She did not identify this accident when asked at her deposition about motor vehicle accidents since April 2017.

- Harris was in another accident in April 2018. She testified that she injured her neck and her back in this accident.

- Harris was rear-ended on the highway in June 2019. Following that accident, she "sought treatment for my neck and my back" and experienced a "tingling" in her right leg that she continues to live with.

- Harris was in another car accident in January 2020, but she did not identify this accident when asked about motor vehicle accidents since April 2017.

Liberty served two Notices of Intention to Take Deposition by Written Question, each with a subpoena duces tecum, to Harris's primary care physician, Dr. F.J. Simmons. One of the subpoenas sought all documents pertaining to Dr. Simmons's care, treatment, and examination of Harris covering the fifteen-year period from April 2007 (ten years before her accident with Haynes) to the date of the subpoena, approximately five years after the accident. Specifically, the subpoena sought the following:

3

All documents and records stored in any format or method including, but not limited to, all medical records, intake forms, patient completed forms and/or documents, correspondence, all office records, emergency room records or reports, inpatient and outpatient charts and records, lien files, SOAP notes, pathology records and reports, lab reports, pharmacy and prescription records, physical therapy records, sign-in sheets, all descriptions of exercises prescribed, documentation which indicate date and time of patient's appointments, insurance documents, all radiology reports and readings, and any other documents maintained pertaining to the care, treatment and examination of Thalia Harris AKA: Thalia N. Harris, from 04/01/2007 to present.

The second subpoena requested films and images maintained by Dr. Simmons over the same fifteen-year period:

COPIES of all original x-rays [sic] films, CT scans, MRIs and any other scans or images maintained . . . and all radiological reports and records maintained, including a comprehensive list of all dates and body parts of all films, CT scans, MRIs and all other images or scans taken and/or maintained, pertaining to Thalia Harris AKA: Thalia N. Harris, from 04/01/2007 to present.

Harris moved to quash both DWQs, arguing that each "on its face is overly broad, not limited in scope, and is a mere fishing expedition" and that Liberty "has no legitimate need for these records as requested." Harris also sought monetary sanctions under Rule of Civil Procedure 13 or the court's inherent power for her counsel's attorney's fees, contending that Liberty's counsel "knowingly, intentionally and purposefully sent frivolous DWQs."[2]  In response, Liberty argued that

---

[2] Harris also moved to quash DWQs that Liberty sent to various insurance companies for their records relating to some of her other car

4

Harris's allegations, in which she claims to have suffered personal injuries caused by the April 2017 accident in an amount greater than $100,000, warrant discovery of her medical condition before the accident and any complaints to or treatment by Dr. Simmons, who is Harris's primary care physician.[3] Liberty noted in its written response that it "is willing to narrow the pre-accident time period" and that it "has offered to reduce the time period of its request to Harris's primary care physician."

At a hearing on Harris's motion, Liberty again represented that it "lessened the scope of the request to Ms. Harris' PCP." When the trial court asked why Liberty's request is "going back 15 years," Liberty's counsel responded, "I have no problem pulling that down" and that "we offered in our response brief . . . to limit the scope of the PCP records." He also stated at the hearing that Harris's counsel could review Dr. Simmons's records and "withhold the ones that are irrelevant . . . or privileged" before producing the documents to Liberty. Liberty's counsel concluded by asking the court to allow it to obtain the discovery sought "as modified, in our response; that is, . . . limiting the request to her PCP, Dr. Simmons, to five years before and five years after the accident, with the condition that those records are provided to [Harris's counsel] first with giving him . . . two weeks to review and produce the records,

---

accidents, making nearly identical arguments and seeking the same sanctions. Although both motions were argued together, the trial court did not rule on the motion regarding discovery of the insurance company records.

[3] The parties do not dispute that Dr. Simmons was Harris's primary care physician during the time period for which discovery was sought. Harris's counsel also describes Dr. Simmons as her "OB/GYN physician."

withholding any that are privileged." In response, Harris's counsel noted that at least two other trial court judges had quashed similar discovery requests and imposed sanctions "for the same thing" that Liberty had done.

The trial court granted Harris's motion and quashed the notices without specifying the reasons. The court also found that "defense counsel has acted in bad faith" and ordered "defense counsel" to pay $2,000 as a sanction. Liberty filed a mandamus petition in the court of appeals, which was denied. 2022 WL 1076175 (Tex. App.—Dallas Apr. 11, 2022). Liberty then sought mandamus relief from this Court.

A party establishes its right to mandamus relief by showing that the trial court clearly abused its discretion and the party lacks an adequate remedy by appeal. *In re Dawson*, 550 S.W.3d 625, 628 (Tex. 2018). A discovery order that denies a party's requested discovery on improper grounds and thus prevents that party from developing a defense that goes to the heart of its case is an abuse of discretion for which mandamus may be appropriate. *See In re K & L Auto Crushers, LLC*, 627 S.W.3d 239, 256 (Tex. 2021).

Our procedural rules generally permit discovery of "any matter that is not privileged and is relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a). We have said that the purpose of discovery is to enable courts to decide disputes based on "what the facts reveal, not by what facts are concealed." *K & L Auto Crushers*, 627 S.W.3d at 248 (quoting *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 394 (Tex. 2014)). While the permissible scope of discovery is broad, trial courts must consider proportionality and weigh

6

a party's right to discovery against the needs of the case. *See In re State Farm Lloyds*, 520 S.W.3d 595, 607 (Tex. 2017). This proportionality inquiry requires case-by-case balancing in light of several factors, including the likely benefit of the requested discovery, the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, the importance of the proposed discovery in resolving the litigation, and any other articulable factor bearing on proportionality. *Id.* at 607-12. Ultimately, the "court's responsibility, using all the information provided by the parties, is to consider [the proportionality] factors in reaching a case-specific determination of the appropriate scope of discovery." *Id.* at 615 (quoting FED. R. CIV. P. 26 committee's note to 2015 amendment) (alteration in original).

Liberty contends that the trial court abused its discretion by completely denying its requests for discovery from Harris's primary care physician. Liberty argues that the requested documents are relevant and discoverable because Harris has placed the existence, causation, and extent of her alleged injuries at issue by suing and, indeed, testifying that she suffered back and neck injuries—for which she seeks damages in this case—in other accidents that occurred within the time period covered by the DWQs. According to Liberty, precluding it from obtaining these records vitiates or severely compromises its ability to present a viable defense at trial. We agree.

Having settled with Haynes, Harris's suit for UIM benefits requires her to prove in this case Haynes's liability for the accident and the existence and amount of her damages. *See In re USAA Gen. Indem.*

7

*Co.*, 624 S.W.3d 782, 788 (Tex. 2021) (describing the coverage trial as resembling "a typical car wreck case" (internal quotation omitted)). Specifically, Harris must prove that Haynes's negligence caused the April 2017 accident, which in turn caused her to suffer damages exceeding the $100,000 she was paid by Haynes's insurer. Information that is relevant to these disputed issues is discoverable unless privileged or disproportionate in light of the factors discussed above. *See id.* at 791-93. In personal injury cases, relevant evidence at trial includes both evidence of the injured person's pre-occurrence condition and the course of her physical condition and progress after the occurrence. *Guevara v. Ferrer*, 247 S.W.3d 662, 666-67 (Tex. 2007). And we have held that information about the insured's pre-existing medical condition at the time of the accident is relevant to the insurer's damages defenses. *In re Cent. Or. Truck Co.*, 644 S.W.3d 668, 670 (Tex. 2022).

Aside from Harris herself, Dr. Simmons is likely the only person who can provide evidence of Harris's pre-accident condition. Dr. Simmons's records may also evidence the existence and extent of Harris's injuries following the April 2017 accident, based on Harris's complaints (or lack thereof) and any testing or observations by the doctor immediately after the accident. In addition, there is evidence of other car accidents that caused physical injuries similar to those Harris attributes to the April 2017 accident. Dr. Simmons's records may show what, if anything, Harris reported about those other accidents, which could affect a factfinder's decision about the causal link between her physical injuries and the April 2017 accident. Even if Dr. Simmons's records do not reflect any discussion of or treatment for the April 2017

accident, the absence of that information may itself be relevant to the jury's deliberations. For all these reasons, Liberty is entitled to discovery from Harris's primary care physician.

In response, Harris does not dispute that some of the information Liberty seeks is relevant. Instead, Harris contends the trial court did not clearly abuse its discretion because the document request was "excessive" and "plainly overbroad." In the trial court, Harris primarily argued that Liberty's requests were not reasonably tailored and constituted an improper fishing expedition because they asked Dr. Simmons to produce "[a]ll documents and records." But Liberty's request was limited to documents "pertaining to the care, treatment and examination of Thalia Harris," which is a relevant subject for discovery given the dispute over the existence, cause, and extent of Harris's alleged personal injuries. *See Guevara*, 247 S.W.3d at 666-67. Nothing in the record suggests that the trial court considered the proportionality factors, as we have said courts must do. *State Farm Lloyds*, 520 S.W.3d at 615. To the contrary, by quashing all discovery from Harris's primary physician, the court's order runs afoul of our comment to Rule 192 that a court "abuses its discretion in unreasonably restricting a party's access to information through discovery." TEX. R. CIV. P. 192 cmt. 7.

In arguing to this Court that the trial court was justified in quashing the discovery as overbroad, Harris focuses exclusively on the document requests as originally written. But Liberty expressly narrowed the timeframe of its original requests to five years before the accident and five years after. The record shows that Harris was involved in car accidents both before and after the April 2017 accident and that

9

at least some of them involved similar injuries to those she claims arose from the accident at issue here. Liberty's request as modified therefore does not seek production of records from "an unreasonably long time period" so as to make it impermissibly overbroad. *See In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) ("Discovery orders requiring document production from an unreasonably long time period or from distant and unrelated locales are impermissibly overbroad."); *cf.* TEX. CIV. PRAC. & REM. CODE § 74.052(c) (requiring a plaintiff asserting a health care liability claim to provide a medical authorization form identifying, among other things, all physicians or health care providers who examined, evaluated, or treated the plaintiff "during a period commencing five years prior to the incident"). And Harris presents no argument to the contrary. In light of Liberty's agreed limitation, the trial court clearly abused its discretion by granting the motion to quash. *See K & L Auto Crushers*, 627 S.W.3d at 251 (concluding that the trial court should have considered concessions made on the record at a hearing in determining whether a party's document requests were sufficiently narrowed and targeted).

Harris also argues that the discovery requests would impose significant burdens on Harris and her counsel, and at "personal cost to her privacy." The question of whether a discovery request is unduly burdensome is distinct from the question of whether it is overbroad. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014). Harris does not assert any undue burden on Dr. Simmons to produce the requested documents. And Harris presented no evidence to support her conclusory allegations that having her counsel review the requested documents for

10

relevance or privilege would be unduly burdensome. *See K & L Auto Crushers*, 627 S.W.3d at 253 ("[A] party resisting discovery must do more than 'make conclusory allegations that the requested discovery is unduly burdensome.'" (quoting *In re Alford Chevrolet-Geo*, 997 S.W.2d 173, 181 (Tex. 1999))).

Liberty's discovery requests sought relevant information and were not so broad or disproportionate as to justify an order precluding all discovery from Dr. Simmons. Harris failed to demonstrate that responding to these discovery requests would be unduly burdensome. The trial court therefore clearly abused its discretion by quashing the discovery.

We further conclude that mandamus relief is appropriate in this case. If a discovery order vitiates or severely compromises a party's ability to present a viable claim or defense at trial, an appeal is not an adequate remedy. *In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (citing *Walker v. Packer*, 827 S.W.2d 833, 843 (Tex. 1992)). We recently held that mandamus relief was appropriate when an order quashed requested discovery because it effectively denied a party's reasonable opportunity to develop a defense that goes to the heart of its case and the appellate court could not evaluate on appeal the effect of the trial court's denial of discovery from third parties. *K & L Auto Crushers*, 627 S.W.3d at 256.

The central issue in this UIM lawsuit is the extent of Harris's injuries that were caused by the April 2017 accident. The trial court's order prevents Liberty from obtaining records from Harris's primary doctor regarding her pre-accident condition and whether she complained

11

of similar injuries from her multiple other car accidents. That discovery may produce information that undercuts the evidence adduced by Harris and her hand-selected providers regarding the cause of Harris's ailments. The discovery order thus denies Liberty a reasonable opportunity to develop a defense that goes to the heart of its case. And because the absent discovery is from a third party, the information sought cannot be part of the appellate record, making it difficult, if not impossible, to determine on appeal whether its absence at trial affected the outcome. We thus conclude that the trial court's order vitiates or severely compromises Liberty's ability to present a viable defense at trial and an appeal is not an adequate remedy. Moreover, by Harris's own admission, other trial courts have been issuing similarly erroneous orders. While we are mindful that mandamus review should not be overused, mandamus is appropriate in select cases to afford appropriate guidance to the law. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (finding mandamus relief appropriate for an issue that had arisen in other cases and was likely to recur but eluded answer by appeal).

We also set aside the trial court's award of sanctions. Harris's only asserted basis for sanctions was Liberty's allegedly "frivolous" discovery requests. Because we conclude the trial court clearly abused its discretion by quashing Liberty's discovery requests, there is nothing in the record to support the sanctions order. *See Glob. Servs., Inc. v. Bianchi*, 901 S.W.2d 934, 938 (Tex. 1995) (holding that a movant's failure to establish sanctionable conduct rendered a trial court's sanctions order a clear abuse of discretion).

Without hearing oral argument, *see* TEX. R. APP. P. 52.8(c), we conditionally grant the writ of mandamus and order the trial court to vacate its April 4, 2022 order quashing the deposition notices directed to Dr. Simmons and ordering sanctions.  We are confident the trial court will comply, and our writ will issue only if it does not.

**OPINION DELIVERED:** November 17, 2023