# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-23-00664-CV

**Stephen Orsinger, Appellant**

**v.**

**Ann Kathryn Orsinger, Appellee**

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-14-002508, THE HONORABLE MADELEINE CONNOR, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Stephen Orsinger challenges a post-judgment order in this suit affecting the parent-child relationship (SAPCR). The Office of the Attorney General (OAG) and Ann Kathryn Orsinger sought to clarify the decree and to confirm child-support arrearages, and Ann sought to modify the decree. Before reaching the merits of those requests, the trial court found Stephen in contempt for violating provisions of the decree requiring him to provide Ann with income-related documents, to provide health and dental insurance for the children, and to obtain a life-insurance policy on himself. The court also found Stephen abused the post-judgment discovery process by failing to produce income-related documents; the court sanctioned Stephen by awarding attorney's fees, barring him from offering evidence contradicting Ann on support-related issues, and concluding that he was deliberately unemployed or underemployed.

We lack jurisdiction to consider Stephen's complaints about the contempt order on direct appeal and will dismiss that portion of this appeal. We will conclude that the trial court

abused its discretion in finding some of the discovery abuses and that it abused its discretion in imposing the sanctions it did. We will reverse the discovery-sanctions order in part and remand for further proceedings.

**BACKGROUND**

The parties share three children born in 2010, 2012, and 2014. The parties' agreed 2015 divorce decree required Stephen to pay child support, provide health and dental insurance for the children, and obtain a life-insurance policy on himself to ensure that his children would remain supported if he died before they reached majority.

The child-support obligation was set at $2,114.55 per month due on the first of each month from July 2015, through May 2016. His subsequent obligation was to be set based on his monthly net resources from May 1, 2015, through April 30, 2016, as determined by the parties' agreement or by binding arbitration. Beginning June 1, 2016, Stephen was required to pay child-support set at 30% of his monthly net resources up to the first $11,666.66 of his monthly net resources, capping his child-support obligation at $3,500. Stephen was required to provide Ann with copies of his 2015 W-2, any and all paystubs from January to April 2016, and any and all documents reflecting any income earned or monies paid to Stephen from May 2015 through April 2016. Upon determining Stephen's child-support obligation based on the monthly net resources, the parties were to file an agreed order modifying the parent-child relationship that showed Stephen's "precise child support obligation amount beginning on June 1, 2016[,] and thereafter." They did not do so, leaving no court-set amount of child support due. At the hearing on the motion to compel and motion to enforce, Stephen testified that he paid $2,114.55—the amount set for the first few months post-decree and requested by the OAG—until May 2021

2

when he stopped paying any support. He said he resumed paying support of $834 per month in March 2022 pursuant to temporary orders. He testified that he disagreed with the amount set by the OAG.

Stephen was required to maintain health and dental insurance for each child as long as child-support was payable for that child. He stopped providing it beginning September 2018, but claimed he and Ann had agreed that she would provide health and dental insurance for the children and that he would reimburse her. Stephen testified that his contributions for health and dental insurance were covered by the excess he paid in child support. However, he said he could not specify what amount was dedicated to reimburse Ann for their children's health and dental insurance because his child-support obligation was not set.

Stephen, an attorney representing himself, testified at the hearing on the motion for sanctions that he maintained a life-insurance policy as late as February 2016. He said he did not obtain life insurance thereafter because he did not know what amount to insure himself for because the child-support obligation was not reset as required.

In November 2021, the OAG filed its First Amended Motion for Clarification and Modification of Prior Support Order and Motion to Confirm Support Arrearages. The OAG also requested judgment for the children's unreimbursed medical expenses and medical and dental insurance.

Ann filed a cross-petition to modify the support order, for clarification, for confirmation of support arrearages, and for judgment. She made discovery requests, then sought to compel discovery responses and requested sanctions for Stephen's failures to comply with those requests. In the Order on Ann Orsinger's Motion to Compel Discovery and for Sanctions (First Order), an associate judge granted the motion to compel in part, specifying what steps

3

Stephen needed to take to comply with Interrogatory 6 and Requests for Production 1, 12, 14, 36, and 49. The court awarded $5,250 in attorney's fees as sanctions, but probated $4,750 of the award pending his compliance with the order compelling discovery responses.

After Stephen's time for responding to her discovery as directed in the First Order lapsed, Ann filed motions for enforcement for his non-compliance with her discovery requests and for contempt of the court's 2015 decree. The court held a hearing at which Stephen testified.

The trial court found Stephen in contempt of the 2015 decree for failing to provide documents required by the 2015 decree, to maintain health and dental insurance on the children, and to maintain life insurance on himself. The court treated each failure to provide insurance or produce a document as a separate violation for each period it was required, whether once, monthly, or annually. The court found Stephen guilty of 123 counts of criminal contempt and sentenced him to 170 days in jail for each count, to be served concurrently. The court held that Stephen could suspend the commitment for those counts for ten years if he paid to Ann $7,860 in attorney's fees and $248.78 in expenses associated with prosecuting the enforcement action. If Stephen did not suspend his confinement by paying the fees and expenses by the deadline, he could purge himself of civil contempt by paying those amounts.

The trial court also determined that Stephen failed to produce documents in response to Ann's discovery requests and required by the court's July 19, 2022 Order on Ann Orsinger's Second Motion to Compel Discovery and for Sanction (Second Order). The court found that Stephen failed to provide a substantive response to Interrogatory number 6, which required him—for each month of his child-support obligation—to prepare a statement showing the specific amount he was required to pay, his method of calculating that amount, the specific amount he paid, the source of the money for that payment, the amount in excess or arrearage, and

4

an explanation for not paying the required amount. The court also found that Stephen failed to produce "adequate responsive material to Ann" in response to requests for production (RFP) 1 (bank statements), 12 (credit-card and charge accounts), 14 (financial statements), 36 (credit reports), and 49 (taxes). The court found that Stephen's failures to produce these materials was an abuse of the discovery process and that a lesser sanction had already been imposed. The court disallowed Stephen from "offering any evidence or testimony regarding proposed evidence, which was not timely produced or is contrary to other relief ordered herein." It also barred him from offering any testimony or evidence

- contrary to Ann Orsinger's designated claim that Stephen Orsinger's monthly child support payment obligation due to Ann Orsinger for the months of June 2016 through the date of final trial in this lawsuit is an amount of no less than $2,114.55 per month;

- that he had fully complied with his obligation to pay required child support;

- that he had paid more child support than required; or

- that expenses associated with operation of any business should be used to offset his child-support obligation.

The court also concluded that "it shall be taken as established fact at final trial that Stephen Orsinger's actual income for calculation of Stephen Orsinger's child support obligation is significantly less than what Stephen Orsinger could earn because of intentional unemployment or underemployment as those terms are defined in Texas Family Code § 154.066."

The court awarded $7,860 in attorney's fees related to the prosecution of the motion to compel and motion for enforcement. The court also revoked the probation of the $4,750 in sanctions imposed with the first order compelling discovery and ordered Stephen to pay that full amount to Ann.

**DISCUSSION**

Stephen contends that the trial court's death-penalty sanctions were an abuse of discretion, that its contempt findings regarding the decree were not supported, that the finding of violations of the First Order were not supported by the record, and that the attorney's fees award was "nullified" by the court's abuse of discretion in the enforcement and contempt orders.

## I. The contempt finding is not appealable.

We cannot consider Stephen's challenge to the contempt order on direct appeal. Such orders may only be reviewed via a petition for writ of habeas corpus or writ of mandamus. *In re Janson*, 614 S.W.3d 724, 727 (Tex. 2020) (orig. proceeding) ("Because contempt orders are not appealable, they are reviewable only by writ of mandamus or habeas corpus."); *Toney v. Strickland*, No. 03-23-00002-CV, 2024 WL 4629167, at *1 (Tex. App.—Austin Oct. 31, 2024, no pet.) (mem. op.). When the contemnor is not jailed, the proper vehicle to challenge a contempt order is a writ of mandamus, which requires the contemnor to show that the trial court abused its discretion. *Janson*, 614 S.W.3d at 727. Stephen filed only a direct appeal and did not request mandamus relief in the alternative. We have no jurisdiction over the appeal of the order finding Stephen in contempt of the decree. We dismiss this portion of the appeal challenging the contempt finding.

## II. The trial court abused its discretion by assessing death-penalty sanctions.

Stephen contends that the discovery sanctions were an abuse of discretion because the violations found were based on standards not expressed by the First Order and were not supported by the evidence in the record. He also contends that there was no direct relationship between the offensive conduct and the sanctions imposed and that the punishment does not fit his

6

acts or omissions. While we ordinarily do not have jurisdiction on direct appeal to review discovery sanctions, we may consider the discovery sanctions as part of our review of the award of attorney's fees. *See Bahar v. Lyon Fin. Servs., Inc.*, 330 S.W.3d 379, 388 (Tex. App.—Austin 2010, pet. denied); *see also World Class Cap. Grp., LLC v. Gibson, Dunn & Crutcher LLP*, No. 03-21-00360-CV, 2023 WL 2697881, at *6 (Tex. App.—Austin Mar. 30, 2023).

## A. Applicable law

Sanctions may be imposed, after notice and a hearing, on parties who refuse to respond or give inadequate responses to valid discovery requests or orders. *See* Tex. R. Civ. P. 215.1–.5; *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 885 (Tex. 2017). Evasive or incomplete answers are treated as a failure to answer. Tex. R. Civ. P. 215.1(c). Rule 215 leaves sanctions to the sound discretion of the trial court. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991).

Trial courts' discretion to impose discovery sanctions is not unlimited. First, the award must further a recognized purpose of discovery sanctions. *See Bodnow Corp. v. City of Hondo*, 721 S.W.2d 839, 840 (Tex. 1986) (per curiam) ("The purposes of discovery sanctions are to: (1) secure the parties' compliance with the rules of discovery; (2) deter other litigants from violating the discovery rules; and (3) punish parties that violate the rules of discovery." (citations omitted)); *see also CHRISTUS Health Gulf Coast v. Carswell*, 505 S.W.3d 528, 540 (Tex. 2016) (explaining that another purpose of discovery sanctions is to "rectify discovery abuse by compensating the aggrieved party for expenses incurred"). The sanctions imposed must be "just," no more severe than required to further their legitimate purposes, and specifically related to the harm done by the condemned conduct. *See, e.g., Spohn Hosp. v. Mayer*, 104 S.W.3d 878,

882 (Tex. 2003); *TransAmerican*, 811 S.W.2d at 917.  In other words, "[t]he punishment should fit the crime." *TransAmerican*, 811 S.W.2d at 917.

The imposition of severe sanctions is limited by constitutional due process. *Id.* Discovery sanctions cannot be used to adjudicate the merits of a party's claims or defenses unless a party's hindrance of the discovery process justifies a presumption that its claims or defenses lack merit. *Id.* at 918.  "However, if a party refuses to produce material evidence, despite the imposition of lesser sanctions, the court may presume that an asserted claim or defense lacks merit and dispose of it." *Id.*  "Sanctions which are so severe as to preclude presentation of the merits of the case should not be assessed absent a party's flagrant bad faith or counsel's callous disregard for the responsibilities of discovery under the rules." *Id.*

We review a trial court's imposition of discovery sanctions for a clear abuse of discretion. *See Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004).  A trial court abuses its discretion if it acts "without reference to any guiding rules or principles." *Id.* at 839 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985)).  Its judgment should be reversed only if the ruling was arbitrary or unreasonable. *Id*.  Appellate courts review the entire record, including the evidence, arguments of counsel, written discovery on file, and the circumstances surrounding the party's alleged discovery abuse. *See Response Time, Inc. v. Sterling Com. (N. Am.), Inc.*, 95 S.W.3d 656, 659 (Tex. App.—Dallas 2002, no pet.).  The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838-39.

B.      **Existence of discovery abuse**

The court sanctioned Stephen for his failures to comply with the First Order.  The trial court found with respect to five requests for production (RFPs) and one interrogatory that

8

Stephen "failed to provide adequate responsive material to Ann Orsinger as mandated by the Court's July 18, 2022 written order." In so doing, the court rejected Stephen's explanation that he produced the only responsive documents available, that some documents do not exist, and that neither the request nor the court's order compelling discovery specified the format of the documents.

1. RFP-1, -12, and -14: financial statements These discovery requests overlap somewhat. With respect to RFP-1, Ann requested and the court compelled production of documents pertaining to statements periodically prepared by a bank or other financial entities. Concerning RFP-12, the court compelled statements and other documents pertaining to charges and payments on credit or charge accounts held in Stephen's name or an entity he controls. The scope of the First Order regarding RFP-14 concerned documents pertaining to Stephen's financial statements, loan applications, financial information statements, and lists of monthly income, expenses, assets, and liabilities. For each of these requests, the court's order specified information from accounts with PayPal, Venmo, and Chase. The court wrote in the First Order that the requested statements would include information used to calculate Stephen's child-support obligation. The court also allowed Stephen to redact irrelevant information.

According to Ann, Stephen produced PayPal records from June 2020 through June 2022, Chase statements for an account from August 2016 through July 2022 as well as an unknown Chase account listing payments in 2021-22, and a Venmo screenshot listing a 2019 payment to a parenting coach and a 2022 deposit.

In her second motion to compel, Ann asserted that Stephen needed to produce the same records responsive to all three of these requests for production: records for PayPal from October 24, 2015, through May 2020; for a Chase account from October 24, 2015, through

9

July 15, 2016; for that same Chase account from August 16, 2016, through July 2022 "that are from the financial institution and not in a manipulatable Excel Spreadsheet format; expense records from October 24, 2015, through July 2021; expense records from October 24, 2015 through July 2021; and other unspecified Venmo records. On appeal, Ann contends that "[p]roduction of documents pertaining to statements prepared by a bank, savings and loan, credit union, or other financial institution contemplates statements, not Excel spreadsheets." She argues that RFP-12's request for documents reflecting transactions in his financial accounts was not satisfied by a Chase document showing general categories of expenses like "utilities" without breaking down the category by specific expense.

The bulk of the testimony about the production of financial records concerned the use of manipulable spreadsheets for Stephen's Chase account. There was no testimony regarding the completeness of the PayPal records. Stephen testified that he had only three Venmo transactions at the time he responded to the discovery and that the record produced showed that. Stephen testified that he used the spreadsheet version of the Chase statements because it was easier to redact irrelevant information but testified that he would produce non-manipulable versions redacted with a marker if the court required it. He testified that he believed the statement summarizing his expenses was sufficiently specific. When asked what the utility category included, he said "electric, gas, trash, it would probably include Internet . . . whatever you think a bill in utility is, it's probably considered by them to be a monthly expense." When asked where the cost of renewing his bar license—a cost he deducted from his resources available to pay child support—was listed, he responded that he could not tell exactly when he paid his bar dues. He also intended to deduct continuing-legal-education class costs, but did not specify where those were listed.

10

In its Second Order, the court concluded that Stephen "failed to provide adequate responsive material" to Ann as required by the First Order, but the court did not specify what was missing or why the produced records were inadequate. In her second motion to compel, Ann asserted that the above-listed categories of documents were unproduced, but did not produce evidence that the missing documents exist. *See Global Servs., Inc. v. Bianchi*, 901 S.W.2d 934, 937 (Tex. 1995) (holding movant for sanctions has burden to prove discovery respondent who failed to produce document has such within possession, custody, or control). The record from the hearing does not demonstrate that any records of PayPal and Venmo transactions are missing. Stephen testified that he produced no statements from a Chase savings account after its balance reached $0 in August 2016. The record undisputedly shows that Stephen produced manipulable versions of Chase account statements, but neither the request nor the First Order specified the format of the statements to be produced.

While the documents Stephen produced fall within the request for "[d]ocuments pertaining to statements prepared by a bank . . . ", the trial court did not abuse its discretion in concluding that compliance with the request and its First Order required production of additional documents that should have been produced. The court reasonably could have held that the First Order required production of non-manipulable versions of the bank account statements in Stephen's possession; the discovery rules allow the court to weigh the burden of producing evidence in different formats against the need for the additional format of the evidence. *See* Tex. R. Civ. P. 192.4(b) (allowing court to limit discovery methods if burden or expense of proposed discovery outweighs its likely benefit considering needs of case, amount in controversy, party resources, importance of issues, and importance

11

of proposed discovery to resolving issues); *cf. In re State Farm Lloyds*, 520 S.W.3d 595, 607 (Tex. 2017) (holding courts must consider whether production in requested form should be denied in favor of reasonably usable alternative form). Similarly, the trial court did not abuse its discretion by concluding that a document with the general categorization of expenses was inadequate and that other more specific documents should be produced because Stephen did not testify expressly that he had produced all documents he had showing his expenses. His testimony regarding the expense summary statement was somewhat vague—that the utility category "probably" included internet and he was not sure when he paid his bar dues and intended to deduct unspecified CLE costs.

2.    RFP-36: credit report    The court ordered that Stephen produce a credit report for himself from Experian, Transunion, or Equifax. Stephen produced a one-page screenshot of his report from the Experian portal that Ann wrote in her second motion to compel contained "no responsive information." The report stated that Stephen had 0% credit usage, $276 in total debt, and no credit score because he "may not have enough credit history for us to generate [his] FICO score."

Stephen testified that the credit report he produced was the report he received from Experian. He said, "That is the entirety of it and it does indicate that I don't have enough credit history to generate a report . . . ." The trial court concluded that Stephen "failed to provide adequate responsive material." Ann argues on appeal that the one-page report is "suspect in its brevity."

Suspicion is not proof. *Cf. In re Weekley Homes, L.P.*, 295 S.W.3d 309, 320 (Tex. 2009) (orig. proceeding) (litigant's conclusory assertion that requested deleted emails "must exist" insufficient to justify intrusive search of employees' hard drives). Absent any

evidence that Experian reports are necessarily more extensive and that Stephen improperly refused to produce such an extant report that he possessed, the trial court abused its discretion by concluding that Stephen's production was inadequate.

3. RFP-49: tax documents The court ordered Stephen to produce documents that relate to his or his business entity's federal or state income reporting or gift tax reporting. The court specified production of a true, correct, complete, and signed federal income-tax return with all schedules, 1099s, and W-2s for tax years 2016-18 and 2020, as well as all 1099s, W-2s, or other documents showing income for tax year 2021.

According to Ann's second motion to compel, Stephen produced incomplete, unsigned tax returns in PDF-fillable formats and some related documents. He produced incomplete Form 1040s for 2016-18 and 2020. He also produced a 2017 Schedule C and 1099s for 2018 and 2020-21. Ann requested responsive tax returns and associated documents for all relevant years.

Stephen testified that he produced all printed, signed, and scanned tax returns in his possession. He testified that he prepared draft tax returns to submit to his children's schools for financial-aid consideration, but said, "I did not ever indicate that I filed those returns with the IRS and I never indicated that I had represented to the IRS that those were my tax obligations for those years." Though he initially invoked his Fifth Amendment privilege against self-incrimination regarding whether he had filed income-tax returns for 2016-21, this exchange occurred:

Q. Mr. Orsinger, why haven't you filed tax returns for all those years?
A. Inability to pay.

13

Q. Do you recognize, sir, that although you have a professed inability to pay, you still have an obligation to file?

A. I'm going to assert the Fifth Amendment on that one.

In an email from Ann's counsel to Stephen memorializing a phone conversation held after the First Order was signed, Ann's counsel wrote that Stephen said for the first time to Ann's counsel that he had not filed with the IRS any of the draft returns he had produced; though Stephen asserted at the hearing that the email lacked necessary context, he did not provide that context and conceded that he had not told Ann's counsel that the statements in the email were incorrect. Stephen asserted that he had produced 1099s for all relevant years but, when looking through records during the hearing, indicated that at least one might have been produced by his employer. The trial court concluded that Stephen "failed to provide adequate responsive material."

Stephen argues on appeal that he produced "any and all tax documents in his possession . . . in the form in which Appellant had them." He contends that he is able to produce the documents that he has and "cannot create new ones out of thin air." Ann responds that none of the returns produced were signed and that all were in PDF-fillable format and manipulable. She notes that Stephen had not told her or the associate judge that he had not filed tax returns and invoked his privilege against self-incrimination when asked whether he filed returns for 2016-21.

Stephen's obligations to file documents with the IRS are not the same as his obligations to respond to requests for production in this case. A document that does not exist is not within a party's possession, custody, or control, and parties cannot be forced to create documents that do not exist for the sole purpose of complying with a request for production. *In re Preventative Pest Control Hous., LLC*, 580 S.W.3d 455, 460 (Tex. App.—Houston [14th Dist.] 2019, orig. proceeding). Even if Stephen did not produce every 1099 issued to him at

some point, that is not evidence that he failed to produce documents in his possession when he received the discovery requests. Regardless of the status of his filing obligations with the IRS, the only evidence in the record here is Stephen's testimony that he produced all the responsive tax documents that he possessed.

The trial court abused its discretion by concluding that Stephen failed to provide adequate responsive material concerning this request for tax documents.

### 4. Interrogatory 6: chart for child-support obligations and payments

The court ordered Stephen to comply with the interrogatory which asked, for each month he was obligated to pay child support, that he state

    a. the specific amount of money that you were required to pay;

    b. the methodology or calculations establishing that specific dollar amount;

    c. the specific dollar amount you actually paid;

    d. the source of the money which you utilized to pay that specific dollar amount;

    e. the amount, if any, that you are in arrears;

    f. the amount, if any, that you paid in excess of the required specific dollar amount;

    g. if you did not pay the required specific dollar amount owed for a given month, the reason(s) why you did not do so.

Stephen produced a chart listing "Year, Amount Owed, Amount Paid, Difference" with amounts for years 2016 through 2022—though the amount owed and the difference for 2022 were "TBD" because the year was not complete.

In her second motion to compel, Ann requested a "substantive response to the interrogatory request, which answers all subparts without objection."

15

On appeal, Stephen asserts that Ann's only complaint is that the figures were annual as opposed to monthly. He contends that Ann could easily divide his chart's annual numbers by twelve to ascertain the monthly amounts owed and paid. He contends that "[i]t is absurd to find a party in contempt because the other party refuses to do rudimentary math."

It is, however, not an abuse of discretion for the trial court to require a party to comply with a clear discovery request and court order. Ann requested that Stephen list "for each month he was obligated to pay child support" the amounts he was required to pay, the amount he paid, and the amounts of excess or arrearage; it did not ask Stephen to provide an annual sum and require Ann or the court to do any calculations. Likewise, the First Order required Stephen to list "for each month he was obligated to pay child support" the amounts he was required to pay, the amount he paid, and the amounts of excess or arrearage; it did not permit Stephen to provide an annual sum and require Ann or the court to do any calculations. Ann plainly complained about more than the annualized data; she asserted in her motion to compel that Stephen had not provided a "substantive response to the interrogatory request, which answers *all subparts* without objection." (Emphasis added.) Stephen admittedly did not provide monthly income, payment, and difference amounts.

Most critically, Stephen's discovery response utterly failed to address, as required by court order, his methodology or calculations establishing his obligation, the source of the money used to pay, and any explanation for any shortfall in his monthly payment. Division of annual dollar amounts by twelve supplies no such explanations. His testimony that he believed he had provided the methodology for calculation his obligation "on several occasions" does not include his court-ordered discovery response. His response that he believed that it was understood that the source of the money used to pay child support was "income" does not

16

provide even an overarching source of those funds like "Chase bank account." Stephen agreed that the 2015 decree did not set a specific dollar amount of child-support obligation and that the obligation was to fluctuate along with his net available resources, but he did not provide the requested and required explanation of the basis for his calculations of his obligation. His chart provided no explanations for the arrearages in 2019 and 2021.

Stephen failed to supply the requested and required monthly entries of obligation, payments, and difference and failed to provide the requested and required explanations. The trial court did not abuse its discretion by finding that Stephen violated the First Order with regard to Interrogatory 6.

We sustain in part and overrule in part issue three.

### C.     Abuse of discretion in imposing sanctions

Stephen contends that the trial court abused its discretion by imposing death-penalty sanctions for his discovery abuses. While the court did not strike his pleadings, it barred him from presenting any evidence about what his child-support obligation was since June 2016 and that it should continue to be any less than $2,114.55—the amount set by the trial court for the first few months after the divorce decree was issued. It also barred him from offering testimony or evidence that he fully complied with his child-support obligation or that he overpaid. It barred him from offering testimony or evidence that expenses associated with operation of any business should be used to offset his child-support obligation. The court also ordered that it be taken as established fact that Stephen's actual income was significantly less than what he could earn because of intentional unemployment or underemployment.

We will assess whether these sanctions are an abuse of discretion concerning the court's conclusions that Stephen failed to adequately respond to RFP-1 and RFP-14 by failing to

17

produce non-manipulable Chase account statements, by failing to produce in response to RFP-12 documents showing more detailed accounting of his expenses, and by failing to provide in response to Interrogatory 6 monthly accounting and explanations concerning his child-support obligations and payments.

We conclude that the trial court abused its discretion by imposing death-penalty sanctions at this stage of the case. The sanctions imposed are excessive in large part because a lesser sanction was not considered properly. *See Cire*, 134 S.W.3d at 841 (requiring courts to consider lesser sanctions and explain why they would be ineffective before imposing death-penalty sanction). The only sanction imposed in the First Order by the associate judge was an award of $5,250 in attorney's fees—$4,750 of which was probated. The court did not explain why imposition of the full original attorney's fees award plus an additional award for pursuing the second motion was not considered along with perhaps some other method of compelling compliance. Barring Stephen from presenting *any* evidence or testimony regarding child-support exceeds the scope of the deficient production and responses to the interrogatory. The excessiveness is particularly notable with regard to the bank statements that were produced in a format that had not been prohibited and the insufficiently specific expense summaries; Stephen offered to supply the statements in the preferred but previously unspecified format. Similarly, his production of too-general expense summaries does not support the prohibition of all evidence contradicting Ann's arguments for support. Stephen's refusal to comply with the monthly calculation and explanation requirements of Interrogatory 6 is more problematic because his appellate argument shows that his non-compliance is rooted in something other than misunderstanding or a need for clarification; however, his dismissive appellate argument was not before the trial court when it imposed the sanction. The unexplained leap from a largely

probated and nominal attorney's fees award in the First Order to death-penalty sanction exceeds acceptable discretion on this record. *See Cire*, 134 S.W.3d at 841 (death-penalty sanctions reserved for exceptional cases where fully apparent that no lesser sanction would promote compliance with rules).

The court also abused its discretion by affirmatively finding that Stephen's income was significantly less than his potential because he was intentionally unemployed or underemployed. Sanctions must directly relate to the discovery abuse. *See TransAmerican*, 811 S.W.2d at 917; *In re N.R.C.*, 94 S.W.3d 799, 810-11 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (holding failure to pay ad litem did not justify sanction of exclusion of witnesses). None of the deficient discovery responses bear on his job potential and whether or why he failed to fulfill that potential, so the sanction of the presumed finding on that issue is both excessive and unrelated to the sanctionable conduct. The court clearly abused its discretion by directing that Stephen's income underachievement and its intentionality be taken as established fact based on the discovery abuses in this case. *See Iliff v. Iliff*, 339 S.W.3d 74, 82 (Tex. 2011) (discussing standard for finding intentional unemployment or underemployment). We will reverse the non-monetary sanctions imposed in the Second Order. We sustain issue one.

### D. The attorney's fees award must be reversed.

The trial court assessed a single attorney's fees award for all of the sanctioned conduct without assigning any particular amount to a particular failure to respond. While some award of attorney's fees as sanctions may be appropriate, because we reverse the trial court's sanctions in part, at least some of the attorney's fees award may be unsupported. *Cf. Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 312 (Tex. 2006) (only when discrete legal services advance both a recoverable and unrecoverable claim are they so intertwined that they need not be

19

segregated; unsegregated fees for entire case are some evidence what permissible fee award should be). Accordingly, we reverse the attorney's fees awarded as sanctions and remand for further proceedings. We sustain issue four.

## CONCLUSION

We dismiss Stephen's appeal of the contempt order. We reverse the Order on Ann Orsinger's Second Motion to Compel Discovery and for Sanctions in part. We affirm the findings that Stephen failed to respond adequately to requests for Interrogatory 6 and Requests for Production 1, 12, and 14. We reverse the court's findings that Stephen failed to provide adequate responses to the request for tax-related documents and credit reports in Requests for Production 36 and 49. We reverse the court's orders barring Stephen from presenting testimony or evidence regarding his child-support obligation and decreeing that Stephen's underemployment or unemployment be taken as established fact. We reverse the revocation of the probation of the award of attorney's fees concerning the First Order and reverse the award of attorney's fees concerning the Second Motion to Compel Discovery and for Sanctions in Part. We remand this cause for further proceedings.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Theofanis and Ellis

Affirmed in Part, Dismissed in Part, Reversed and Remanded in Part

Filed: October 31, 2025